AMERICAN WEEKLY, INC., ET AL *v.* ELEANOR MEDILL PATTERSON

[No. 57, October Term, 1940.]

*Decided December 18th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Karl T. Steinmann* and *John W. Cable, 3rd,* for the appellants.

*Simon E. Sobeloff,* with whom was *William Taft Feldman,* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This suit was brought pursuant to chapter 294 of Acts of 1939 (Code, art. 31A) to declare null and avoid a notice of an alleged breach of contract sent appellee by

appellants, and to construe the rights of the appellee under said contract.

Eleanor Medill Patterson, the plaintiff below and appellee in this court, is the publisher of the Washington Times-Herald, a consolidation of two former Hearst papers which she purchased in January, 1939.

Hearst Consolidated Publications, Inc., one of the appellants and defendants below, is the owner, indirectly through the medium of Hearst Publications, Inc., of the American Weekly, Inc., which latter company publishes the American Weekly and Comic Weekly-Puck. Hearst Consolidated Publications, Inc., also owned, prior to December 16th, 1939, the Atlanta Georgian, Atlanta Sunday American, Baltimore News-Post, and Baltimore Sunday American, among others.

American Newspapers, Inc., another of the myriad corporations composing the Hearst empire, prior to January 1st, 1939, owned the Washington Herald and the Washington Times, but on that date entered into a series of agreements of purchase and sale of these two papers to Mrs. Eleanor Medill Patterson, who prior to 1939 had operated them under a lease-option agreement, the terms of which need not here concern us.

Simultaneously with the sale to Patterson of the Washington Times and Washington Herald, a contract was entered into between Mrs. Patterson, as publisher of the Washington Times-Herald, on the one hand, and the American Weekly, Inc., and Hearst Consolidated Publications, Inc., on the other. By the terms of this contract Mrs. Patterson agreed to buy one copy of the weekly supplement published by American Weekly for each of the papers sold by her. By Paragraph ten of this agreement Consolidated agrees that it will not permit the distribution in Washington, D. C., in Virginia and in North Carolina, of pre-date issues of any Sunday Hearst newspaper owned or controlled by it prior to the exposure for sale of the corresponding Sunday editions of the paper now known as the Sunday Washington Herald-Times. "* * * The publisher shall not

permit the distribution outside the pre-date territory of any pre-date issues of the Sunday Washington Herald-Times, or the exposure for sale outside the pre-date territory of any regular editions of the said newspaper prior to the exposure for sale in the particular area of the corresponding editions of the Hearst Sunday newspapers exposed for sale in that area; * * *." There is also a provision that in the pre-date territory assigned to the Herald-Times the price at which that paper is sold shall be controlling and shall be the minimum for sale of any Hearst papers and that, outside this pre-date territory, the wholesale charges for Hearst papers shall be binding as a minimum upon the Herald-Times.

On December 16th, 1939, almost a year after the above agreement was entered into, Hearst sold the Atlanta Georgian and Atlanta Sunday American to one James M. Cox, who immediately notified Hearst Consolidated Publications that it was not his intention to exercise in the State of South Carolina the pre-date right in the sale of his papers which had previously been exercised by the Hearst organization.

The Washington Times-Herald, after learning that this territory had been abandoned by Governor Cox, immediately began the exposure and sale of pre-dated editions of its paper in South Carolina. Hearst Consolidated and American Weekly notified the Washington Times-Herald in writing that it considered this a breach of paragraph ten of the contract between them and demanded a correction of the alleged breach within fifteen days.

Upon receipt of that notice, suit was filed by Mrs. Patterson under the Declaratory Judgments Act asking a judicial construction of the contract. From a decree in her favor this appeal was taken.

At the trial and over objection of the appellants, evidence was introduced by appellee tending to prove the following: Prior to 1936 Mrs. Patterson had been employed by the Hearst organization in various responsible capacities, including that of editor and later as publisher

of one of the Hearst papers. In 1936 the Hearst organization agreed among themselves, in an effort to reduce internecine competition, to allocate the various territories which they served, particularly with reference to the right to exploit the sale of pre-date papers. Pre-date papers are papers largely composed of features and special articles, which are put on sale several days in advance of the date which they carry. As a result of this allocation agreement each paper is assured of a territory wherein it has exclusive pre-date rights.

As the result of this allocation agreement the papers which were later sold to Cox were assigned among others the State of South Carolina, while the papers purchased by Mrs. Patterson were assigned the states of Maryland, Virginia and District of Columbia.

It is urged by appellants that this evidence was inadmissible since it was in violation of the parol evidence rule. They contend that paragraph ten of the contract is free from any ambiguity on the face of it, and hence any extrinsic evidence in aid of construction is inadmissible and when so admitted is ground for reversal.

It is unquestionably true that where the language of an instrument is clear and unequivocal and no room for doubt exists, extrinsic evidence is not admissible which might serve to alter or vary the plain and ordinary language employed by the parties. *Danzer & Co. v. Western Maryland Ry.*, 164 Md. 448, 165 A. 463.

Parol evidence, or more properly, evidence of the extrinsic circumstances existing at the time of the execution of the agreement, is not here introduced for the purpose of altering or changing the ordinary and casual meaning of the language employed by the parties, nor indeed to indicate the intention of the parties at the time this agreement was made, and there is no doubt that had the relationships of the parties and the underlying facts remained unchanged this court would enforce to its full extent the language used by the parties. The theory of the appellee, however, is that there has been a change in the position of the appellants since the execu-

tion of the agreement, which prevents them from insisting on the full interpretation of the language which was employed. It is no proper answer to that argument to hold that appellee is unable by parol evidence to show that such change has occurred. If the law is that a restrictive covenant of this sort can be enforced only so long as the party in whose favor the covenant runs maintains an interest in the competitive area, which needs protection, then regardless of the words employed in the covenant it is essential to examine the facts surrounding the contract. If the law is that the words of the contract are subject to enforcement regardless of the existence or non-existence of any interest of the party in whose favor the covenant runs, or if such interest is found to exist, then the evidence here introduced over objection is immaterial. No error was committed by the reception of the evidence referred to.

It is the contention of the appellee that a covenant of the nature here involved should be enforced only to the extent necessary to protect a legitimate interest of the party in whose favor the covenant runs. At the time the contract was executed the Hearst Consolidated Publications, Inc., owned the Atlanta Georgian and Atlanta Sunday American, which served the territory of South Carolina. It is significant that paragraph ten of the contract makes no reference to the American Weekly, Inc., the manufacturer of American Weekly-Puck. The covenant instead runs only to Hearst Consolidated Publications, Inc., and by it appellee undertakes to sell no pre-date papers outside of Washington, Virginia and North Carolina. By the same paragraph Hearst Consolidated agrees it will not permit the distribution in Washington, D. C., Virginia, and in North Carolina, of any pre-date issues of "any Sunday Hearst Newspapers owned or controlled by it." There is no covenant by American Weekly not to permit the distribution of pre-date issues of the American Weekly-Puck by papers other than those owned by Hearst. It must be taken therefore that this clause was intended for the pro-

tection of the other Hearst papers serving the territory outside the pre-date area assigned to Mrs. Patterson, and is not intended to protect the sale of American Weekly-Puck or to preserve to it control over its sales in the territory in dispute.

Since the time of *Tulk v. Moxhay*, 11 Beav. 571; *Id*. 2 *Phillips*, 774, restrictive covenants have been enforced by the courts whether they applied to land or chattels. Courts, however, have shown a commendable restraint in keeping within close confines the enforcement of restrictive covenants.

It has long been the rule in this state that a covenant not to engage in business in competition with a business then being sold, will be enforced, but only to the extent necessary to protect the interest of the new purchaser. *Guerand v. Dandelet*, 32 Md. 561; *Griffin v. Guy*, 172 Md. 510, 192 A. 359; *Edgecomb v. Edmonston*, 257 Mass. 12, 153 N. E. 99; *Stanley Co. v. Lagomarsino*, D. C., 53 Fed. 2nd 112.

Where the covenant as originally drawn has been found too broad, courts have had no difficulty in restricting it to its proper sphere and enforcing it only to that extent. See *Williston on Contracts*, (4th Ed.) sec. 1660.

It has likewise long been a rule of equity that where the reason for the enforcement of a restrictive covenant on land has ceased, as where the neighborhood has completely changed, equity will no longer enforce the covenant, as to do so would be to encumber the economic use of land without at the same time achieving any substantial economic benefit to the covenantee. *Summers v. Beeler*, 90 Md. 474, 475, 45 A. 19; *Safe Dep. & Tr. Co. v. Flaherty*, 91 Md. 489, 46 A. 1009; *Adams v. Plaza Construction Co.*, 157 Md. 674, 145 A. 483; *Sowers v. Holy Nativity Church*, 149 Md. 434, 131 A. 785; *Ferguson v. Beth-Mary Steel Corp.*, 166 Md. 666, 172 A. 238; *Himmel v. Hendler*, 161 Md. 181, 155 A. 316; *Legum v. Carlin*, 168 Md. 191, 177 A. 287.

It would therefore seem that the proper test to be applied is whether the interest which the covenant was

designed to protect is still outstanding in the covenantee, so as to continue to warrant the full and literal application of the language used.

Here no such situation is presented. The papers owned by Hearst at the time of the making of the covenant have been disposed of. Hearst Consolidated no longer has any interest in the sale of papers in the State of South Carolina, and, as pre-dates are primarily designed as a stimulation to the sale of papers, Hearst can have no proper interest in the distribution of pre-dates in the disputed territory. While American Weekly, Inc., still has a legitimate interest in the sale of the comic supplement, it is not properly a beneficiary of the covenant, since the covenant runs only to the Hearst Consolidated. Moreover, it is difficult to see how a restriction on the sale of pre-dates could aid it, since all supplements sold will be manufactured by it, regardless of what paper makes the distribution.

Holding the views we have expressed, it follows that the decree appealed from, to the effect (a) that the notice from appellants to appellee, alleging a breach by appellee of paragraph ten of the agreement was inoperative and of no effect and (b) that appellee had the right to distribute pre-date issues of the Sunday newspaper, Washington Herald-Times, containing the American Weekly and weekly Comic Puck as supplements, in that part of the State of South Carolina known as Atlanta pre-date territory, in which sales of pre-date issues were abandoned by Atlanta Journal Company as per letter of December 16th, 1939, to American Weekly, Inc., was correct and should be affirmed.

*Decree affirmed, with costs.*