Charles V. LA ROCCA, Appellant,

v.

HOWARD–REED OIL COMPANY, Inc.,
Appellee.

No. 5020.

Court of Civil Appeals of Texas.

Beaumont.

March 31, 1955.

John H. Benckenstein, Beaumont, for appellant.

Keith, Mehaffey & McNicholas, George M. Sonfield, Beaumont, for appellee.

PER CURIAM.

Appellee, Howard-Reed Oil Company, Inc., sued appellant, Charles V. LaRocca, in the district court of Jefferson County, seeking to enjoin him from engaging in the business of distributing at wholesale gasoline and lubricating oils within the limits of Jefferson County. After a hearing, the court entered judgment, enjoining appellant as said for. He has appealed.

The following are the facts, which are practically undisputed: (Appellee is referred to as plaintiff, appellant as defendant).

Plaintiff was and is a jobber of petroleum products, distributing gasoline and lubricating oils for the Continental Oil Company and kerosene and diesel oil for the Pure Oil Company, Jefferson County, Texas. On January 30, 1952, plaintiff's place of business was located at 1102 College Street, Beaumont, Texas. Defendant, a married man, 45 years of age, with three children has always been engaged in the distribution of petroleum products in Jefferson County, Texas, either an employee or owner; and on January 30, 1952, he was the owner of a wholesale distributing business for the Continental Oil Company, known as the "Chas. V. LaRocca Distributing Co.", located at 855 Crockett Street, Beaumont, Texas; he had a building and five 6,000 gallon storage tanks. From his bulk plant at said address, he sold and distributed only Continental Oil Company's products, "Conoco" brands of gasoline, oils and greases; and he was a competitor of all other distributors such as the Gulf, Phillips 66, Pure and all the other oil companies.

In January of 1952, a question arose between the plaintiff and the defendant, regarding price cutting and sales to competitive stations. Negotiations were begun by plaintiff to lease defendant's gasoline bulk plant at 855 Crockett Street, Beaumont, Texas; defendant refused to sell

his Continental Oil Company business to plaintiff, unless plaintiff leased his bulk plant, bought his tank truck and took his entire stock of Continental Oil Company's products and equipment off of his hands, and when plaintiff agreed to such terms, a trade was made by the terms of which:

1.  Plaintiff purchased defendant's (a) tank truck, 4 or 5 computing gasoline pumps and miscellaneous equipment for $5,591.52 (b) his inventory on hand at cost–$9,000; and

2.  Leased defendant's bulk plant at 855 Crockett Street, Beaumont, Texas, for a term of five years at a rental of $9,000 payable in monthly installments of $150 each.

The bill of sale provided among other things:

1.  A consideration of $5,591.62 (the price actually paid for a tank truck, 5 computing gasoline pumps and miscellaneous equipment). For the sale of defendant's right, title and interest in and to:

(a)  That certain business known as Chas. V. LaRocca Distributing Company of Beaumont, Texas, together with all property used in such business except five 6,000 gallon tanks, two two-inch five-foot hoses, two two-inch nozzles and a Brodie two-inch meter, stock of merchandise and all contracts, goodwill and franchises;

(b)  All business developed, licenses and rights used by Chas. V. LaRocca Distributing Company;

(c)  All trademarks, trade names and trade rights;

2.  For a consideration of $9,000, all merchandise and stock in trade based upon Continental Oil Company's invoice price plus freight;

3.  All books, records and accounts were to be available to plaintiff, and it was to pay defendant ¼¢ a gallon on gasoline and 2¢ a gallon on oil sold to accounts thereto attached and all other accounts which defendant might secure; and

4.  Defendant agreed "not to engage in the character of business in which I am now engaged in Jefferson County, Texas for a period of five years from the first day of February, 1952, either by establishing a new business or a department of an existing business, or in any other manner whether directly or indirectly."

After the trade was completed, defendant went to work for plaintiff at the rate of $200 a month. Defendant immediately moved off the premises and plaintiff took over the same and operated defendant's business on the leased premises for about two months, when it closed the business and disconnected the telephone. Plaintiff kept the old employees of the defendant for about four and a half months, and, thereafter it did not actively operate any business at defendant's said bulk plant. On August 28, 1952, plaintiff moved the oil and grease from the defendant's bulk plant to its new location at 3700 Hollywood and 11th Streets, Beaumont, Texas. Plaintiff served defendant's customers from defendant's bulk plant for about eighteen months. The leased bulk plant was not open for business after June 15, 1952.

Because of lack of use the underground storage tanks deteriorated—there was rust and a lot of scale in all five of them, and the building was out of repair.

Defendant's accounts: Gulf Coast Rent-A-Car, National Bedding Co., Triangle Service Station, Taystee Baking Company, Riches Service Station, and many of the accounts quit trading with plaintiff. The plant remained closed to business a year and nine months. Defendant lost his commission on at least 300 gallons a day.

After the plaintiff moved its business over to its new location, then it wanted to cancel the lease. After months of negotiating defendant agreed to accept $2,550 and the return of his bulk plant station in cancellation of the plaintiff's obligation to pay him $5,100 in rentals.

After accepting the possession of his bulk plant at 855 Crockett Street, Beaumont, Texas, defendant repaired it, bought a

truck, and started to distribute the petroleum products of Phillips Petroleum Company in Beaumont, Texas, and there immediately followed this suit.

The appellant gave the following testimony himself: "Q. What do you call your business now? A. The same as when I sold it, Charles V. LaRocca Distributing Company.

"Q. That is the business that you sold to these folks? A. Correct.

"Q. Now you intend to continue selling to the very customers that you sold to these people, don't you? A. It is only a handful but if the court permits me, I would.

"Q. You started selling them gasoline even after you had gotten the papers about this lawsuit, didn't you? A. I sure did.

"Q. And you knew last week when you were selling it that we were going to hear this case as soon as the Judge could get to it, didn't you? A. Correct.

"Q. * * * You intend to continue doing business with these same accounts, in the same manner you were doing business before you sold to these boys here? A. I intended to before this hearing come up; if the court will permit it, I will."

The appellant's two points of error are as follows:

### First Point of Error.

"The restrictive covenant 'Not to Engage in the character of Business in which I am now Engaged in Jefferson County, Texas,' for a period of five years, contained in Plaintiff's Bill of Sale to Defendant, Covering a Business And Its Goodwill, Located at 855 Crockett Street, Beaumont, Texas, Ceased to be Effective After Defendant Surrendered Said Premises to Plaintiff; and the Trial Court Erred in Enforcing Said Restrictive Covenant by Temporary Injunction."

### Second Point of Error.

"The Trial Court Erred in Construing the Restrictive Covenant, 'Not to Engage in the Character of Business in which I am Now Engaged in Jefferson County, Texas' to Include the Wholesale Distribution of all Brands of Petroleum Products."

■ Under his first point the appellant argues that the restrictive covenant which he made with the appellee covered only the business located at 855 Crockett Street in Beaumont, the premises which he leased to appellee, and that when this lease terminated the restrictive covenant not to engage in the business of distributing oils and gasoline ceased to be operative. We find no merit in this contention and the point is overruled. Restrictive covenants of this type are obviously entered into for the purpose of protecting the purchaser of the business in the enjoyment of good will of such business previously enjoyed by the seller. Such agreements have been universally upheld by the courts of this state so long as the restraint as to time and area are within reasonable limits. See: 10 Tex. Jur., pages 224, et seq., and cases cited therein. Gates v. Hooper, 90 Tex. 563, 39 S.W. 1079; Raymond v. Yarrington, 96 Tex. 443, 72 S.W. 580, 73 S.W. 800, 62 L.R.A. 962; Foxworth-Galbraith Lumber Co. v. Turner, 121 Tex. 177, 46 S.W.2d 663, 87 A.L.R. 323; Linen Service Corp. of Texas v. Myres, Tex.Civ.App., 128 S.W.2d 850; Jennings v. Shepherd Laundries Co., Tex. Civ.App., 276 S.W. 726.

■ It has likewise long been a rule of equity that where the reason for enforcing a restrictive covenant has ceased, equity will no longer enforce the covenant. See: American Weekly v. Patterson, 179 Md. 109, 16 A.2d 912; M. M. Ullman & Co. v. Levy, 172 La. 79, 133 So. 369; Marcus v. Baker, Tex.Civ.App., 221 S.W.2d 575. These three cases are all cited by and relied upon by the appellant here. The opinion in American Weekly v. Patterson, supra [179 Md. 109, 16 A.2d 915], contains this holding which is applicable to the controversy before us: "It would therefore seem that the proper test to be applied is whether the interest which the covenant was designed to protect is still outstanding in the covenantee so as to continue to

warrant the full and literal application of the language used."

■ Abandonment of the premises by the appellee as a place of business and the return of such premises to the appellant was effected by the payment to the appellant of a valuable consideration. He paid him some $2,550 in cash and the parties also agreed on cancellation of the further obligation of the payment of $5,100 in rents. This return of the premises to the appellant by the appellee for a consideration can in no sense be regarded as an abandonment by the appellee of the restrictive covenant, nor as a ground for the cessation of the effectiveness of the terms of the restrictive covenant. The appellant did not in his restrictive covenant agree merely not to engage in competition with the business of the appellee at the premises existing at 855 Crockett Street in Beaumont, Texas. He agreed in specific terms not to engage in the character of business in which he was then engaged in Jefferson County, Texas for a period of five years from February 1, 1952, either by establishing a new business or a department of an existing business or in any other manner whether directly or indirectly. As we view it he thus bound himself not to engage in competition with the business of the appellee in the distribution of gasoline and lubricating oils anywhere in Jefferson County. Clearly the interest which appellee had in this restrictive covenant was still outstanding in the appellee and it was just as much to its advantage in carrying on its business as a distributor of gasoline and oils to protect itself from the competition of the appellant after the premises were returned to the appellant as it was before. Appellee's business of distributing oils and gasoline was never abandoned and the reason for the making of the restrictive covenant was still as strong and impelling as when the agreement was made. Equity will enforce such an agreement by injunction under appropriate facts.

■■ Under his second point appellant contends that he was engaged exclusively in distributing petroleum products of Continental Oil Company and that he later began to distribute only the petroleum products of the Phillips Petroleum Company. He contends that the character of business in which he was previously engaged was the distribution of Continental's products and when he now attempts to sell and distribute Phillips products he is not engaged in the character of business from which he agreed to desist in the restrictive covenant. The purpose of such restrictive covenants as the one the parties here entered into was to render effective the good will which the appellee bought from the appellant when he bought him out. Any activity or conduct on the part of the seller of good will which will probably impair or reduce the advantages of purchasing such good will constitutes a breach of the seller's agreement that he would not engage in the character of business in which he was previously engaged. Foxworth-Galbraith Lumber Co. v. Turner, supra. The appellant, according to his testimony "has always been engaged in the distribution of petroleum products in Jefferson County, Texas either as an employee or owner." He is now again so engaged, in violation of his restrictive agreement. We are unable to agree with the appellant's argument under this point and it is overruled.

The trial court correctly applied the law to the facts, which are not in dispute. The judgment is therefore affirmed.