H.H. CHANDLER and R.W. Johnston, Appellants,

v.

MASTERCRAFT DENTAL CORPORATION OF TEXAS INC., and Robert Ross, Appellees.

No. 2–85–283–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 7, 1987.

---

Price & Swander and Steven H. Swander, Fort Worth, for appellants.

Bankston & Lobingier and David B. Lobingier, Fort Worth, for appellees.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Appellants, H.H. Chandler and R.W. Johnston, appeal a judgment against them for breach of the covenant not to compete pursuant to the sale of their business. The jury assessed a total of $100,000 damages plus attorney's fees.

We affirm.

This appeal arises from the sale of the assets of a corporation, Mastercraft Dental Corporation, to Robert Ross. Ross purchased the assets of the dental equipment manufacturing concern from Chandler and Johnston in March 1982 by a sales/purchase agreement signed by Chandler, Johnston and Ross. One provision of the agreement was a convenant not to compete for a duration of "not less than five (5) years." Johnston and Chandler remained as employees of the corporation, and signed employment contracts containing a convenant not to compete for a three year duration. Shortly after Ross purchased the business, he reincorporated it as Mastercraft Dental Co. of Texas, Inc. In October, 1984 Paul Dayton, a former employee of Mastercraft Dental Corporation, formed Dayton Dental Corporation with help from Chandler and Johnston.

In August, 1984 Chandler and Johnston sued Ross and Mastercraft alleging a breach of the employment contracts and for declaratory judgment. After filing an answer, Ross counterclaimed, alleging breach of the sales/purchase agreement. In March, 1985, a temporary injunction was granted in favor of Ross and Mastercraft Dental Corporation prohibiting Chandler and Johnston from participating in dental equipment manufacture, sales, or service in Texas. The court also found no conflict between the covenants not to compete in

the employment contracts and the convenant not to compete in the sales/purchase agreement. Chandler and Johnston then dropped Mastercraft Dental Corporation as a defendant from their pleadings and requested construction of the sales/purchase agreement under the declaratory judgments act. *See* TEX.CIV.PRAC. AND REM.CODE ANN. ch. 37 (Vernon 1986). Ross amended his pleading to add Mastercraft Dental Corporation back into the lawsuit as a counter-plaintiff.

The live pleadings at trial were as follows: Chandler and Johnston sought declaratory relief against Ross to declare unenforceable the covenant not to compete in the sales/purchase agreement, as it contained an indefinite duration clause. They also sought the $30,000 remaining unpaid balance due for the purchase of the business. This sum had been paid into the court registry. Ross and Mastercraft initially sought relief against Paul Dayton and Dayton Dental Corporation (a strawman corporation set up by Chandler and Johnston). Paul Dayton and the Dayton Corporation were severed from the law suit. Ross and Mastercraft sued for breach of the convenant not to compete in the sales/purchase agreement, conversion of trade secrets, and attorney's fees against Chandler and Johnston. Because Ross and Mastercraft had the burden of proof on the factual issues before the jury, the parties were realigned and Ross and Mastercraft had the right to open and close. The jury found all issues in favor of Ross and Mastercraft. The court entered judgment accordingly, ordering the temporary injunction be made permanent. Chandler and Johnston appeal the trial court's judgment in nine points of error.

In point of error one appellants argue the trial court abused its discretion by allowing appellees to amend their pleadings after the trial began, adding a new party claimant. Appellees respond that the trial amendment was to correct a misnomer, not to add a new party to the suit. When trial began, the appellees were identified as Robert Ross and Mastercraft Dental Corporation. During the trial, the appellants established, through the testimony of Robert Ross, that after Ross bought Mastercraft Dental Corporation he formed a new company called Mastercraft Dental Company of Texas, Inc., in 1983. This company purchased Mastercraft Dental Corporation. Throughout the trial the corporation was loosely referred to as Mastercraft. The pleadings were amended when it became apparent that Mastercraft Dental Company had not been properly named as a party in the pleadings, in either the original or counter-suit.

On appeal, appellants argue the amendment was error because they had no opportunity to obtain discovery of the new party plaintiff, and were unable to properly prepare a defense against the Dental Company, which was seeking to recover damages against them. Appellees maintain appellants did not preserve this point because there was no plea challenging the appellees' capacity to bring suit as required under TEX.R.CIV.P. 93. Additionally, appellees present an argument essentially based on estoppel; that appellants suffered no harm by virtue of the trial amendment. because they initially brought the suit against Ross and Mastercraft Dental Corporation.

■ The proper method to challenge the capacity of a party to sue or be sued is by verified plea prescribed by TEX.R. CIV.P. 93. *See Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Van Voorhies v. Hudson*, 683 S.W.2d 809, 810 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Biggs v. Garrett*, 651 S.W.2d 342, 343 (Tex.App.—El Paso 1983, no writ.). There is no such plea in the record of this case, and we hold its absence is a failure to preserve the point for appeal. We further note that the party problem was established by appellants' attorney during the morning of the first day of trial and the court considered the merits of appellees' trial amendment before granting it. We hold the trial court did not abuse its discretion by allowing the trial amendment, and the error, if any, was not preserved for appeal. Point of error one is overruled.

In point of error two, appellants complain the trial court erred in awarding damages to the appellees because the covenant not to compete in the sales/purchase agreement was unreasonable as to duration. The covenant not to compete provided:

> Seller, H.H. Chandler and R.W. Johnston (except for the development and marketing of bonding material for dental braces), and except for employment by Buyer, agrees to restrain from participation in the dental equipment manufacturing, sales or service in the State of Texas and the State of New York, for a period of not less than five (5) years.

[3] Appellants argue the five year clause is unreasonable because it is inconsistent with their employment agreements providing noncompetition covenants lasting three years. Appellants cite no authority and give no explanation why this inconsistency makes the duration clause unreasonable. Appellants also argue that the "not less than five (5) years" provision in sales/purchase agreement renders the clause unreasonable because the duration is indefinite. Appellants further contend the trial court's failure to construe the covenant as indefinite in duration resulted in the improper awarding of damages for breach of the covenant. The trial court construed the problematic duration clause as being five years. The final judgment, entered on September 23, 1985, recited the temporary injunction that was signed on March 4, 1985 should be made permanent, and that appellants were enjoined until March 3, 1987, from taking any actions or acts designed or calculated to violate the covenant not to compete in the sales/purchase agreement. The judgment also sets forth specific acts which appellants were enjoined from doing until March 3, 1987. It is clear from the judgment that the court did, as appellants point out, construe the covenant to have a duration of five years. Any indefiniteness stemming from the "for at least five (5) years," language was cured by the court's interpretation that the covenant's duration was five years.

Having determined the duration of the covenant was not indefinite, we must determine whether the five year duration of the covenant was reasonable. Covenants against competition are not favored by the courts because of public policy considerations against restraints of trade. *Bob Pagan Ford, Inc. v. Smith*, 638 S.W.2d 176, 178 (Tex.App.—Houston [1st Dist.] 1982, no writ). Such a contract will not be enforced unless its terms are reasonable. *Hill v. Mobil Auto Trim, Inc.*, 725 S.W.2d 168, 170 (Tex.1987); *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960); *Bob Pagan Ford*, 638 S.W.2d at 178. Whether a covenant not to compete is reasonable is a question of law for the court. *Hill* 725 S.W.2d at 170; *Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983). In determining the reasonableness of the duration of a covenant not to compete the trial court has considerable discretion. *Bob Pagan Ford*, 638 S.W.2d at 178.

Prior to the *Hill* case, whether a covenant not to compete was enforceable was essentially determined by a balancing test: "if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted," the covenant is unreasonable. *Hill*, 725 S.W.2d at 170; *Henshaw*, 656 S.W.2d at 418; *Weatherford Oil Tool Company*, 340 S.W.2d at 951. In the *Hill* case, the Supreme Court of Texas identified four requirements that must exist in order to have a reasonable covenant not to compete: (1) the covenant must be necessary to protect the promisee (appellees here); (2) the covenant must not be oppressive to the promisor (appellants); (3) the covenant must not be injurious to the public; and (4) the promisee must give consideration. *Hill*, 725 S.W.2d at 170–71.

Applying this test we hold the covenant is reasonable. First the covenant was necessary to insure the promisee (Ross), that the business's goodwill and trade secrets would be protected. Goodwill and trade secrets are protectable interests of a business. *See La Rocca v. Howard–Reed*

*Oil Company,* 277 S.W.2d 769, 772 (Tex. Civ.App.—Beaumont 1955, no writ). The evidence revealed appellants had been in the dental equipment manufacturing business for approximately 25 years, and had developed many friends and associates among orthodontists, a fairly small professional group. Because of the nature of the business, most sales contacts are made at trade conventions and from customers retained on customer lists. Also testimony showed the business has a very limited clientele, and that only about five companies nationwide engage in the business. Thus it is evident from the highly specialized product line and limited customers involved in this kind of business that the covenant was necessary to protect the business goodwill, the key asset Ross purchased from appellants.

Secondly, the covenant was not oppressive to the promisor (appellants). The evidence at trial showed the covenant restricted appellants' involvement in the manufacturing, selling and servicing of dental equipment except for the development of bonding material for dental braces. Johnston and Chandler both testified they formed another corporation, Craftmaster, prior to selling Mastercraft and that Craftmaster was devoted exclusively to developing bonding material for braces. The covenant did not affect Craftmaster in any way. Also, the covenant did not apply while appellants were employed by Ross, an option both exercised for a short time.

Third, we find the covenant was not injurious to the public. The type of goods dealt with here are not necessities where noncompetition would deprive the community of these goods. *See Hill,* 725 S.W.2d at 171. Thus the covenant need only be evaluated with respect to the appellants and appellees.

Fourth and finally the covenant was supported by valuable consideration. Ross paid $100,000 for the assets of the corporation including trade marks and customer lists. Consideration given by appellants was foregoing the right to engage in dental equipment manufacturing, sales, and service for five years.

We hold that the court was correct in finding the covenant reasonable, and that the court properly exercised its discretion in interpreting the restrictive covenant to have a duration of five years. We are persuaded that the evidence adduced at trial supported the court's implied finding that the interests protected by the covenant were still outstanding and outweighed the hardships imposed on appellants under the covenant's enforcement. *See Bob Pagan Ford, Inc.* 638 S.W.2d at 178; *La Rocca,* 277 S.W.2d at 771. For the foregoing reasons we overrule point of error two.

In point of error three appellants contend the trial court instructed the jury with an improper measure of damages for breach of the covenant not to compete. Appellees pleadings allege lost profits as damages. The court submitted the following issue:

### SPECIAL ISSUE NO. *2*

If you have answered each of the inquiries to any subpart of Special Issue No. *1* above "Yes", then answer the following:

What sum of money would compensate Mastercraft Dental Co. of Texas and Robert Ross for their financial losses which were a result of the conduct you have found engaged in by H.H. Chandler and R.W. Johnston?

You are instructed to consider the following in arriving at your award of damages, if any:

(a) Loss of profits in the past to Mastercraft Dental Co. of Texas.

(b) Profits made by Dayton Dental Corp. because of such conduct to the extent not included in (a) above.

(c) The normal increase in business which might have been expected in light of past development and existing conditions.

ANSWER in Dollars and Cents, if any: *$75,000.*

Appellants maintain the issue is too broad because it allows for damages based on *financial losses,* whereas the pleadings seek damages for lost profits. Appellants

do not challenge the evidence supporting the jury finding. Appellees maintain the issue was proper in light of the holdings in *Arabesque Studios v. Academy of Fine Arts*, 529 S.W.2d 564 (Tex.Civ.App.—Dallas 1975, no writ); and *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938).

Damages for lost profits may be determined by various factors, including profits being made prior to the breach of the contract. *Southwest Battery, Corporation,* 115 S.W.2d at 1098–99. Additionally profits made by the subsequent employer of an employee who breaches a non-competition agreement may be considered in assessing damages where the profits would have, at least in part, accrued to the plaintiff in the absence of the breach. *Arabesque Studios,* 529 S.W.2d at 569.

■ We believe the same reasoning applies to the breach of a covenant not to compete pursuant to the sale of a business. In the present case, Ross testified at least four Mastercraft customers did business with Dayton Dental upon referrals by Chandler and Johnston after Ross bought Mastercraft. Ross also testified Mastercraft's profits declined after Chandler and Johnston left his employment, after an initial increase in profits when Ross purchased the business. We find the issue, even though phrased in terms of "financial losses," was not in such variance with the pleadings to be fatal. The proof offered at trial clearly supported the issue and was admitted without objection by appellants' counsel. Appellants' objection to the charge is noted, and we find the trial court limited the issue accordingly. Point of error three is therefore overruled.

In point of error four appellants contend the controlling issue, whether appellants breached the covenant not to compete, was not properly submitted to the jury. Over objection of appellants' counsel the court submitted the following issue:

Find which of the following acts or events have occurred and which acts or events, if any, caused damage, injury or loss to Mastercraft Dental Co. of Texas or Robert Ross:

A. Has Dayton Dental Corp. been directly or indirectly [sic] owned, managed, operated or controlled by H. H. Chandler?

ANSWER:

| Answer Whether Said Event or Act Occurred: | Answer Whether Said Event Or Act Caused Damage, Loss or Injury: |
|---|---|
| Yes: X | |
| No: __ | Yes: X |
| | No: __ |

B. Has Dayton Dental Corp. been directly or indirecly [sic] owned, managed, operated or controlled by R.W. Johnston?

ANSWER:

| Answer Whether Said Event Or Act Occurred: | Answer Whether Said Event Or Act Caused Damage, Loss or Injury: |
|---|---|
| Yes: X | |
| No: __ | Yes: X |
| | No: __ |

C. Has Dayton Dental Corp. received and/or used capital furnished by H. H. Chandler?

ANSWER:

| Answer Whether Said Event Or Act Occurred: | Answer Whether Said Event Or Act Caused Damage, Loss or Injury: |
|---|---|
| Yes: X | |
| No: __ | Yes: X |
| | No: __ |

D. Has Dayton Dental Corp. received and/or used capital furnished by R.W. Johnston?

ANSWER:

| Answer Whether Said Event Or Act Occurred: | Answer Whether Said Event Or Act Caused Damage, Loss or Injury: |
|---|---|
| Yes: X | |
| No: __ | Yes: X |
| | No: __ |

E. Has Dayton Dental Corp. received and/or used consultation, advise or service from H. H. Chandler?

ANSWER:

| Answer Whether Said Event Or Act Occurred: | Answer Whether Said Event Or Act Caused Damage, Loss or Injury: |
|---|---|
| Yes: X | |
| No: __ | Yes: X |
| | No: __ |

F. Has Dayton Dental Corp. received and/or used consultation, advise or service from R.W. Johnston?

ANSWER:

| Answer Whether Said Event Or Act Occurred: | Answer Whether Said Event Or Act Caused Damage, Loss Or Injury: |
|---|---|
| Yes: X | |
| No: __ | Yes: X |
| | No: __ |

Appellants argue the controlling issue was not whether they committed the above acts, but whether this conduct amounted to significant participation in Dayton Dental's business. Appellees contend the language of the non-competition agreement does not distinguish between significant and menial participation in a business competing with

Mastercraft, and that the issue was established as a matter of law by the evidence.

Rule 279 of the Texas Rules of Civil Procedure provides "[w]here the court has fairly submitted the controlling issues raised by such pleading and the evidence, the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue." Although the issue here did not inquire whether the acts of appellants were significant participation in the competing business (i.e. a material breach), we hold the inquiry of causation coupled with the inquiry about commission of the particular acts addresses the same substance. Without passing on the merits of the issue submitted, we find it did address the controlling issue.

Furthermore the evidence is overwhelming that appellants breached the covenant. Chandler admitted he and Johnston loaned money to Paul Dayton to form Dayton Dental, a company involved in the same business as Mastercraft. Chandler also signed checks for Dayton Dental and his truck was observed at Dayton Dental by a private investigator. Johnston also testified he ordered supplies for Dayton Dental through Craftmaster because Dayton had no credit, and that occasionally he picked up parts for Dayton. Johnston also testified he signed checks for Dayton Dental and that he signed an agreement to guarantee the payment of utilities for Dayton Dental prior to the formation of the company. The evidence also showed that Johnston's home address was listed as a mailing address for Dayton Dental and that his post office box was used by the company. The evidence revealed that Johnston and Chandler took Dayton, when he was a Mastercraft employee, to lunch while Ross was on vacation in August of 1984. Shortly thereafter Dayton abruptly quit his job at Mastercraft and formed Dayton Dental in October, 1984.

Paul Dayton testified that he formed Dayton Dental Corporation because he had always wanted to have his own business. However Dayton's testimony revealed an amazing lack of knowledge about his own business and showed heavy reliance on Chandler and Johnston. Dayton testified that Chandler and Johnston loaned him $22,000 to start the business and he considered the two men owners because they provided the financial support. In January, 1985, at a deposition, Dayton said he did not know what a general ledger was, and at the time of trial, July 1985, Dayton did not keep a bookkeeping journal. Dayton admitted his business does the same thing as Mastercraft, in addition to repair work. Dayton also testified he used the same lawyer and accountant for his business as did Chandler and Johnston and that he paid attorney's fees for Chandler and Johnston when their depositions were taken. He further testified Chandler accompanied him to Amarillo to install equipment at an orthodontist's office and that he paid for Chandler to attend a trade convention; the check for such expense being signed by Johnston. Finally, the bank records showed Chandler's involvement with the business as late as March 1985.

Dayton also testified he used the same patterns, molds, and foundry that Mastercraft had used, and that he got the patterns from a storage building next door to Mastercraft, a quonset hut. Dayton testified that he, Chandler and Johnston all went to the quonset hut and took extra patterns, molds, and forms from the building. He thereafter took these items to Supercraft foundry to have molds cast after Supercraft had refused to cast molds for Dayton Dental from the patterns it had on file for Mastercraft. The parts and forms subsequently cast were identical to those used by Mastercraft. Dayton also testified clients were forwarded to him by Chandler and Johnston. In light of the testimony the jury heard, we hold any error in the issue submitted was harmless. We also determine the issue encompassed the elements of the controlling issue. Point of error four is therefore overruled.

In point of error five appellants contend the trial court should have granted their motion for directed verdict because there was no evidence of secrecy attached to information, designs, or components used

in manufacturing the orthodontic chairs and units by Mastercraft. This point of error is linked to special issues three, four and five in which the jury determined appellants converted trade secrets owned by the appellees, that the fair market value of such trade secrets was $25,000, and that the conversion was malicious and fraudulent justifying punitive damages of $30,000.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

Appellants argue the appellees did not meet the "substantial element of secrecy" part of the definition of trade secrets. Appellants also maintain the definition of trade secret is made up of subjective and objective components. The objective prong is that the information must be something not generally known to others in the same business, *Rimes v. Club Corp. of America*, 542 S.W.2d 909, 913 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). The subjective prong is an intent to keep the matter secret

from the general public. *Lamons Metal Gasket Co. v. Traylor*, 361 S.W.2d 211, 212–13 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.).

Appellees contend even though a trade practice or procedure may not itself be a trade secret, the means used to procure it may be improper, giving rise to the protection afforded a trade secret. *See K & G Oil Tool & Service Co., Inc. v. G. & G. Fishing Tool Serv.*, 158 Tex. 594, 314 S.W. 2d 782, 787, *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 149 (1958).

According to the Supreme Court of Texas:

> [a] trade secret may consist of any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article.

*Hyde Corporation v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 776 (1958). This definition clearly applies here where Dayton Dental used the same patterns, match plates, molds, and forms, as well as customer list as Mastercraft to do its business.

We also note this case is akin to the *K & G Oil Tool* case where the Supreme Court held a device need not be the product of invention or subject to patent before it can be protected as a trade secret. *K & G Oil Tool*, 314 S.W.2d at 789. The reasoning behind the Court's conclusion is the nature of a trade secret case, being a breach of contract or wrongful disregard of a confidential relationship. *Id.* at 787. Therefore although it may be lawful for a person to gain possession through proper means of a competitor's product, the same is not true if such knowledge is obtained in disregard of confidential relationships. *Id.* at 788.

■ In this case both appellants and appellees agree there is not a great deal of difference between the products Mastercraft manufactures and other orthodontic equipment on the market; however, appellees maintain and we agree that what was sold here was not necessarily an orthodontic chair and unit, but rather the whole system of processing and manufacturing. Once Dayton Dental hustled Mastercraft's former customers and began using the exact molds and match plates and formulas used by Mastercraft, the rug of the company that Ross purchased was pulled out from under him. We hold therefore that the appellees did not have to prove a substantial element of secrecy in order to recover damages for conversion of trade secrets. The type of trade secrets involved in this case are the same as those in the *K & G Oil Tool* case, which are a protectable interest of the buyer when the seller breaches his duty of confidence. Point of error five is overruled.

In points of error six and seven, appellants submit the trial court erred in overruling their motion to disregard special issues three and four because there was no evidence that they converted trade secrets and because there was no evidence of the market value of the trade secrets at the time of conversion. Because this is a no evidence point, we examine only the evidence tending to support the jury's response to the issues.

■ Dayton testified that when he went with Chandler and Johnston to clean out the quonset hut, among other things, he took two complete manufactured chair units which he later took apart for the purpose of having castings made. Additionally, he took patterns, molds, castings and other materials from the hut. We find there was some evidence to support the jury finding that Chandler and Johnston converted trade secrets.

■ With respect to point of error seven, the jury assessed the fair market value of the converted trade secrets at $25,000. The proper measure of damages for conversion is the value of the property at the time and place of conversion. *Prewitt v.*

*Branham*, 643 S.W.2d 122, 123 (Tex.1982). Here the issue asked the fair market value on or about October 1984 of trade secrets, patterns, molds, castings, devices or compilations of information converted by Chandler and Johnston. At least three independent sources alluded to the fair market value of the converted goods at trial. A letter, from Chandler to Ross informed Ross that tooling equipment of Mastercraft such as match plates, drawing tools, fiberglass molds, shop equipment, and supplies had a value of $50,000. The bill of sale indicated the sales price of certain items, some of which were trade secrets, were valued at $20,000. Customer lists were included in this value. Finally Dayton testified that in his opinion the sum of $5,200 was a fair market value of the patterns in Tarrant County in October 1984.

This evidence may not be the strongest evidence to show market value at the time of conversion. However, it is some evidence of the value of the converted goods and is sufficient to withstand a no evidence point on appeal. The members of the jury had available the three very different estimates of value before them when they determined the value to be $25,000. We find the jury's assessment of value is supported by some evidence. Points of error six and seven are therefore overruled.

■ In point of error number eight appellant's contend the trial court erred in overruling their motion for directed verdict as to the individual damages suffered by Ross because there was no evidence he was individually damaged. Appellants cite no authority for their position and have not otherwise briefed this point of error. Ross was a main party throughout this law suit, and when the parties were realigned prior to beginning of trial, he was in the position of a plaintiff. Other than their motion for instructed verdict, appellants have never challenged Ross' capacity to sue or recover as an individual as required by, TEX.R. CIV.P. 93. We hold that any error complaining of Ross' capacity to recover is waived and not preserved for appeal. We hold the trial court did not abuse its discre-

tion in granting recovery for Ross individually. We overrule this point of error.

In their final point of error, appellant's complain the award of attorney's fees was improper because there was no proper presentment under TEX.CIV.PRAC. & REM.CODE ANN. sec. 38.002 (Vernon 1986) (formerly TEX.REV.CIV.STAT.ANN. art. 2226). To recover attorney's fees under section 38.002, the claimant must be represented by an attorney, present the claim to the opposing party, and payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. *See id.* Presentment is a necessary prerequisite for the recovery of attorney's fees under section 38.002. *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981). In furtherance of the purposes of section 38.002, the statute is to be liberally construed. *See* TEX. CIV.PRAC. & REM.CODE ANN. sec. 38.-005 (Vernon 1986). As a result, various forms of presentment have been allowed. *See Jones,* 614 S.W.2d at 100–01; *Huff v. Fidelity Union Life Ins. Co.,* 158 Tex. 433, 312 S.W.2d 493, 500 (1958); *Kennedy v. Hyde,* 666 S.W.2d 325, 331 (Tex.App.—Fort Worth 1984), *rev'd on other grounds,* 682 S.W.2d 525; *Harvey v. Pedigo Oil Co., Inc.,* 557 S.W.2d 167, 169 (Tex.Civ.App.— Fort Worth 1977, writ ref'd n.r.e.). In a breach of contract case, where the amount of damages in not already fixed in advance, the presentment requirement can be met by presenting the contract claim to the opposing party and that party fails to tender performance. *Jones,* 614 S.W.2d at 100.

We believe appellees did adequately present their claim in accordance with section 38.002. Joseph Colvin, the lawyer who represented Ross in forming Mastercraft Dental Company of Texas, Inc., and who drafted the sale/purchase agreement and the two employment agreements (not Ross' counsel at trial) testified he began corresponding with Chandler and Johnston's lawyer in June–July of 1984 after Chandler's employment with Mastercraft was terminated by Ross. Colvin testified he discussed in detail with Chandler and

Johnston's lawyer the fact that Chandler and Johnston felt they no longer needed to abide by the contracts (presumably because Ross fired Chandler). Finding that there was adequate presentment for attorney's fees under section 38.002, we overrule this point of error and affirm the judgment of the trial court.