Valda M. KIEL, Individually, and as
Next Friend of Jason Von-Eric Kiel,
a Minor, Appellants,

v.

TEXAS EMPLOYERS INSURANCE
ASSOCIATION, Appellees.

No. 01–83–00855–CV

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 20, 1984.
Rehearing Denied Oct. 11, 1984.

George C. Dixie, Houston, for appellants.

Alice Giessel, Talbert, Giessel, Stone, Barker & Lyman, Houston, for appellees.

Before BASS, JACK SMITH and COHEN, JJ.

## OPINION

BASS, Justice.

Valda M. and Jason Kiel, the widow and son of the deceased, brought suit under the Worker' Compensation Act to recover for the death of Tollie James Kiel. A jury found that, although the deceased suffered an injury, it was not within the course of his employment at Quality Electric Steel Company. Appellants filed a motion for judgment notwithstanding the verdict which was overruled, and the Court entered judgment that plaintiffs take nothing.

The judgment is reversed and the cause remanded for a new trial.

Tollie James Kiel, age 53, the decedent, worked at Quality Electric Steel Company as a night supervisor in the plant's heat treating unit. On October 8, 1979, while performing his duties, Kiel told one of his subordinates, Floyd Woodard, to help another employee, J.W. Wofford, load some heavy valves onto a railroad-type car. This loading was to be done in the burning bed, located next to the ovens, where the temperature was in excess of 100 degrees. However, Woodard disobeyed Kiel's orders and instead hid in the restroom. When he was unable to locate Woodard, Kiel worked for over an hour helping Wofford load the heavy valves.

After they were finished, Kiel found his night supervisor, Oscar Greenleaf, and the two men went to look for Woodard. When they finally discovered Woodard in the restroom, Woodard became quite upset at Kiel. A short time later, the windshield to Kiel's pickup truck was broken.

Kiel apparently believed that Woodard had broken the window because Kiel had reported him to Greenleaf. He was discussing the incident with a third employee when Woodard walked by and overheard their conversation. Woodard, who was extremely angry, admitted breaking the window, then threatened to "break" Kiel. He picked up a twelve inch steel pipe, and poked it at Kiel's face and chest. Kiel then told Woodard to get back to work; Woodard refused, and continued verbally to abuse and threaten Kiel. He again poked the rod in Kiel's face and said, "I don't mind killing nobody ... you don't get nothing for killing a black man." Shortly thereafter, another employee broke up the argument and pulled Woodard away from the

scene. Kiel turned to walk away, but then fell dead from a heart attack.

It was originally believed that Kiel had died from a blow delivered by Woodard. The Harris County Medical Examiner performed an autopsy on the body, however, and testified that there were no signs that Kiel had been struck by the pipe. Moreover, he stated that it was his opinion, based on reasonable medical probability, that the physical exertion in loading the pipe and the stress caused by the confrontation incited, accelerated, or aggravated Kiel's underlying heart disease, causing his fatal heart attack.

The jury found that Kiel received an injury on October 8, 1979, but that the injury was not in the course of his employment at Quality Electric Steel. Although the issue of producing cause was never reached, both parties conceded to this Court that Kiel's heart attack was the producing cause of his death. (This is the basis for point of error four, however, since the jury failed to find "course of employment", they never reached the issue of producing cause and, therefore, any error in its submission was harmless).

In their first and second points of error, appellants contend the trial court erred in entering judgment on the jury's answers to the special issues, because the evidence established that the deceased sustained his fatal injury in the course of his employment at Quality Electric Steel Company.

Dr. Jachimczyk testified that Kiel suffered severe arteriosclerosis of the heart which contributed to his death. However, he also testified that in his medical opinion the heavy loading operation and the argument aggravated, accelerated, and incited that pre-existing condition that weakened his heart and, therefore, also contributed to or caused his death.

"Injury" is defined by the Workers' Compensation Act and was defined by the trial court as damage or harm to the physical structure of the body and such disease or infection as naturally results therefrom, or the *incitement, acceleration, or aggravation of any disease, infirmity, or condi-*

*tion, previously or subsequently existing,* by reason of such damage or harm. Tex. Rev.Civ.Stat.Ann. art. 8306 sec. 20 (Vernon 1967). (emphasis added).

■ Therefore, under Texas law, if a work-related problem or activity incited, accelerated, or aggravated his underlying heart condition, it is a sufficient cause for purposes of recovery of workers' compensation benefits. *Baird v. Texas Employers Ins. Assoc.*, 495 S.W.2d 207 (Tex.1973); *Western Casualty and Surety Co. v. Dickie*, 609 S.W.2d 874 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.); *Aetna Insurance Co. v. Hart*, 315 S.W.2d 169 (Tex.Civ.App. —Houston 1958, writ ref'd n.r.e.). Moreover, under this definition, the testimony of Dr. Jachimczyk brought Kiel's death within the requirements of the statute.

The loading operation was undeniably within the course of Kiel's employment. Moreover, the medical examiner testified that the physical exertion required, together with the stressful confrontation with Woodard, "incited, triggered, precipitated or aggravated his pre-existing condition, and thus caused his fatal heart attack." Thus, in order to find that Kiel did not sustain his injury in the course of his employment, the jury would have had to ignore completely the unrebutted testimony of the sole expert witness.

■ The general rule is that the trier of fact is the sole judge of the credibility of the witness and the weight to be given their testimony, and opinion evidence is usually insufficient to establish a fact issue at trial. *Teal v. Powell Lumber Co.*, 262 S.W.2d 223 (Tex.Civ.App.—Beaumont 1953, no writ). The jury's discretion, however, is limited to the resolution of conflicting evidence; it is not within their power to ignore the evidence and decide the issue in accordance with their own whims or wishes. *Mack v. Moore*, 669 S.W.2d 415 (Tex.Civ.App.—Houston [1st Dist.] 1984, no writ) (citing *Teal*). Moreover, Justice Evans, in *Exxon Corporation v. West*, 543 S.W.2d 667 (Tex.Civ.App.1976, writ ref'd, n.r.e.) wrote that unrebutted expert testimony

may be considered as conclusive, if the subject matter required the jury to be guided solely by the testimony of experts, and the evidence is otherwise credible and is free from contradiction or inconsistency.

■ Within the limited area of "heart attack" cases, the jury is not required to be guided "solely by the testimony of experts," but has a recognized area of common knowledge and expertise. *Insurance Company of North America v. Kneten,* 440 S.W.2d 52 (Tex.1969).

■ Therefore, we are unable to find that Dr. Jachimczyk's unrebutted testimony conclusively established causation as a matter of law. However, in light of this testimony and the fact that it was nonrebutted nor weakened on cross-examination, we hold that the jury's finding was so against the greater weight and preponderance of the evidence to be manifestly unjust. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). The appellant's second point of error is sustained.

We hold that appellant's expert testimony could not conclusively establish the issue of causation of a "heart attack" and, accordingly, overrule appellant's first, third, and fifth points of error.

■ In points of error six and seven, appellants contend that the trial court erred in excluding testimony concerning the grievance procedures utilized for the resolution of labor disputes at Quality Electric Steel Company. The appellee objected on the basis of immateriality.

Tex.R.Evid. 401(a), defines the test for "materiality" as whether the evidence rationally relates to any controlling fact issue in dispute. We hold that the procedures used in these hearings are collateral and, therefore, unrelated and immaterial to the issues presented.

■ In point of error 8, appellant argues that the trial court erred in submitting an instruction on "willful and intentional injuries" since there was no evidence to warrant its submission. In order for the court to submit an issue or instruction for the

jury's consideration, there must be some evidence which raises the issue requested.

The instruction submitted by the court stated:

An injury caused by *the employee's willful intention and attempt to injure some other person* is not in the course of employment, unless the injury results from a dispute arising out of the employee's work or manner of performing it.

(emphasis added). This language is derived from Article 8309 of the Texas Revised Civil Statutes. This article excludes from the definition of "injury in the course of employment" injuries to the employee resulting from any of the following: (1) an act of God; (2) an attack or act of a third person because of reasons personal to him; (3) intoxication; and (4) the employee's attempt to injure himself or a third person.

■ The facts in this case raise an inference that the attack by Woodard may not have been "work-related". *See Walters v. American State Ins. Co.,* 654 S.W.2d 423 (Tex.1983). However, because of the small amount of evidence regarding this matter, appellant contends the submission was error. In arguing this point, both parties address whether there was evidence that Woodard's attack on Kiel was because of reasons personal to him. This argument is based on article 8309, subsection 2. However, in actuality, the issue submitted inquired about Kiel's [the employee] attempted injury of a third person, Woodard. This issue is provided for in article 8309 subsection 4. This was an incorrect issue. There was no evidence that Kiel ever attacked Woodard. The evidence was that Woodard was threatening Kiel. Appellant's eighth point of error is sustained.

Point of error 9, was waived by appellant during oral argument.

In point of error 10, appellant alleges that the trial court erred in refusing to allow plaintiffs' counsel to ask leading questions of Max Powell, the personnel manager of Kiel's employer.

■ This case was tried after the new Texas Rules of Evidence became effective.

Rule 610(c), Tex.R.Evid. (1983), addresses the use of leading questions and provides that when a party calls a hostile or adverse witness, or one identified with an adverse witness, interrogation may be by leading questions. Although case law has held that the plaintiff in a compensation case is not allowed to treat the employer company or its employees as "adverse," *Parker v. Traders & General Ins. Co.*, 366 S.W.2d 107 (Tex.Civ.App.—Houston [1st Dist.] 1963, no writ), the witness in the case at bar was obviously both hostile, and associated with an adverse witness. Therefore under Texas Rules of Evidence 610(c), plaintiff's counsel should have been permitted to interrogate the witness by the use of leading questions. The appellant's tenth point of error is sustained.

The cause is reversed and remanded for a new trial.