TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00080-CV







Venture Projects, Inc. d/b/a Concept Services and Matt Hamilton, Appellants



v.



Jeff Morrison d/b/a JM Professional Services, Appellee








FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 231,972, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING








 Appellee Jeff Morrison, doing business as JM Professional Services ("Morrison"),
sued Venture Projects, Inc., doing business as Concept Services ("Concept Services"), and Matt
Hamilton ("Hamilton"), (1) asserting several breach of contract claims, promissory estoppel as an
alternative to his contract claims, fraud, and tortious interference with existing and prospective
contracts. The case was tried to a jury, which found that Concept Services and Hamilton had each
breached contracts with Morrison and assessed damages and attorney's fees. The trial court
rendered judgment in favor of Morrison. On appeal, appellants assert that the trial court
committed reversible error in rendering judgment against them on several of the alleged contracts
because the evidence was legally or factually insufficient to support the existence of such
contracts. Concept Services also contends that certain contracts were unenforceable under the
statute of frauds, (2) and attacks the amount of damages awarded. Both appellants object to the trial
court's award of attorney's fees. We will reverse the trial court's judgment regarding two of the
contract claims and remand those issues to the trial court to determine Morrison's alternative
promissory estoppel claims and to determine the proper amount and allocation of attorney's fees
in light of our holding. We will affirm the remaining portion of the judgment.


BACKGROUND

 Concept Services, a company that supplies equipment to restaurant franchises
throughout the country, hired Morrison in 1992 to install equipment in one of the restaurants it
serviced. Concept Services was satisfied with this initial job, and Morrison began to work on a
job-to-job basis for Concept Services. Concept Services would pay Morrison a base price for each
job, plus any unforseen extras that arose during the project, such as delay or additional equipment. 
Morrison would generally pay his own expenses and liability insurance. At one point, Morrison
attempted to solidify this relationship with a formal written contract, but Concept Services refused.

 Morrison first worked with Don Hawkins, one of the sales representatives for
Concept Services, installing equipment in Boston Chicken restaurants. In late 1993, Morrison and
Hawkins had a disagreement over the Boston Chicken account, (3) and Morrison was approached by
Hamilton, another sales representative for Concept Services. Hamilton was looking for an
installer to work on his accounts and encouraged Morrison to work with him. Morrison and
Hamilton began to work almost exclusively with each other, with Morrison performing
approximately 70 installations in 1993 and 53 in 1994. Toward the latter part of 1994, Morrison
again sought a commitment from Concept Services in the form of a written contract. Although
no written contract was created, Morrison met with Hamilton, who at this time was the exclusive
sales representative for Concept Services for the company's Pizzeria Uno and Ground Round
accounts. Hamilton assured Morrison that Morrison would do all of the installations for the
Pizzeria Uno and Ground Round accounts for 1995. Morrison was later given a schedule, listing
the cities where the anticipated jobs would take place and the corresponding installation dates.

 Soon, however, Morrison's and Hamilton's friendly relationship began to change. 
Hamilton engaged in certain activities that angered Morrison, such as placing a poisonous snake
in a warehouse with one of Morrison's employees, telling "offensive" jokes, asking Morrison's
crew to handle heavy equipment in a manner that Morrison deemed dangerous, and having
"unprofessional" t-shirts made for Morrison and some of his crew. Hamilton, on the other hand,
felt that Morrison was unjustifiably complaining on the job sites and alienating customers. These
conflicts continued to escalate. 


 In late January 1995, Morrison and his crew traveled overnight to reach a job site
in Woburn, Massachusetts, after just completing a job in Pennsylvania. They arrived at the
Woburn site in the morning and worked the entire day. Toward the end of the day, Hamilton
asked Morrison's crew to move a heavy piece of equipment. Morrison refused. The two argued
and Morrison became angry, telling Hamilton how he felt about their recent problems. After the
argument, Morrison performed one additional installation for Concept Services. Hamilton then
informed Morrison that he did not need his services anymore, ending their relationship. 

 Morrison sued Concept Services and Hamilton. A jury awarded Morrison damages
and attorney's fees, finding that (1) Concept Services failed to comply with agreements it made
with Morrison which assured that Morrison would (a) perform all of the installations for the
Pizzeria Uno account in 1995, (b) perform all of the installations for the Ground Round accounts
in 1995, (4) and (c) be paid extra for his work on a Ground Round installation in the Prudential
Building in Boston, Massachusetts; and (2) Hamilton failed to comply with the agreement he made
with Morrison, specifying that Morrison would perform an installation at a Staples Office Supply
Company location and be reimbursed for expenses related to training for that job. (5) The trial court
rendered final judgment in favor of Morrison: against Concept Services for $69,300 in actual
damages and $16,611.38 in pre-judgment interest; against Hamilton for $3000 in actual damages
and $849.96 in pre-judgment interest; and against Concept Services and Hamilton, jointly and
severally, for attorney's fees of $40,175 through trial and additional amounts on appeal. The
judgment also provided that Morrison recover post-judgment interest and costs of court. 

 On appeal appellants present eleven issues. The first six issues address the
contracts related to the Pizzeria Uno and Ground Round accounts; issues seven and eight deal with
the Ground Round installation in the Prudential Building; the ninth issue concerns the installation
for Staples Office Supply Company; and the final two issues address the trial court's award of
attorney's fees.


DISCUSSION

Pizzeria Uno and Ground Round Accounts

Statute of Frauds

 In its fifth issue, Concept Services challenges the agreements made between
Concept Services and Morrison for the Pizzeria Uno and Ground Round accounts as un-enforceable under the statute of frauds. See Tex. Bus. & Com. Code Ann. § 26.01 (West 1987). 
We will consider this issue first as it governs the disposition of the first six issues presented. (6) 

 Morrison contends that Concept Services did not properly preserve its statute-of-
frauds defense for appellate review because it failed to object at trial or request the submission of
a jury question on this issue. We disagree. Whether a contract comes within the statute of frauds
is a question of law. Bratcher v. Dozier, 346 S.W.2d 795, 796 (Tex. 1961); Maginn v. Norwest
Mortgage, 919 S.W.2d 164, 167 (Tex. App.--Austin 1996, no writ). Questions of law are for
the courts and should not be submitted to the jury. See Millhouse v. Wiesenthal, 775 S.W.2d 626,
627-28 (Tex. 1989); Knutson v. Ripson, 354 S.W.2d 575, 576 (Tex. 1962) (submission of
question of law to the jury was improper). To properly place a statute-of-frauds defense before
the trial court, a party must assert such defense in its pleadings. See Tex. R. Civ. P. 94 ("In
pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of frauds"). 

 Concept Services raised the statute of frauds as a defense in its trial pleadings and 
in several post-trial motions: its motion for judgment notwithstanding the verdict, motion for new
trial, and motion to modify judgment. Therefore, we will consider this issue on appeal.

 The statute of frauds requires certain contracts to be in writing and signed by the
person to be charged with the promise or agreement. See Tex. Bus. & Com. Code Ann.
§ 26.01(a) (West 1987). The writing need be in no particular form. However, the instrument
must furnish written evidence of its essential terms, be complete within itself in every material
detail, and contain all essential elements of the agreement, so that the contract can be ascertained
from the writing without resort to oral testimony. See Maginn, 919 S.W.2d at 167 (citing Cohen
v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978)). An oral agreement that cannot be performed
within one year from the date of its making is unenforceable. See Tex. Bus. & Com. Code Ann.
§ 26.01(b)(6) (West 1987). To determine an agreement's duration for the purposes of the statute
of frauds, "the court simply compares the date of the agreement to the date when the performance
under the agreement is to be completed and if there is a year or more in between them then a
writing is required to render the agreement enforceable." Young v. Ward, 917 S.W.2d 506, 508
(Tex. App.--Waco 1996, no writ) (citing Gilliam v. Kouchoucos, 340 S.W.2d 27, 30 (Tex. 1960)
and Chevalier v. Lane's, Inc., 213 S.W.2d 530, 533 (Tex. 1948)).

 It is undisputed that the Ground Round and Pizzeria Uno contracts were made in
late 1994. (7) Performance under the agreements was to be completed at the end of the 1995
calendar year. (8) It is evident that more than one year elapses from the making of these contracts
in 1994, and the time they would have been completed, at the end of 1995.

 Morrison, however, argues that these contracts do not fall within the statute of
frauds because they conceivably could have been performed within one year of their making. It
is true that when no time is fixed by the parties for the performance of an agreement, there is
nothing in the agreement itself to show that it cannot be performed within a year, and thus, the
agreement does not fall within the statute of frauds. See Bratcher, 346 S.W.2d at 796; Morgan
v. Jack Brown Cleaners, Inc., 764 S.W.2d 825, 827 (Tex. App.--Austin 1989, writ denied)
("where no period of performance is stated in employment contracts the statute of frauds is
inapplicable."). However, agreements to work for a definite period of more than one year from
the contract date do fall within the statute of frauds. See Chevalier, 213 S.W.2d at 532; see also
Gilliam, 340 S.W.2d at 30; Young, 917 S.W.2d at 508; Collins v. Allied Pharmacy Management,
Inc., 871 S.W.2d 929, 934 (Tex. App.--Houston [14th Dist.] 1994, no writ). As the supreme
court has stated:


[W]here, by the terms of [an] oral agreement, its period is to extend beyond a year
from the date of its making, the mere possibility of its termination by operation of
law within the year, because of death or other fortuitous event, does not render . . .
the Statute [of Frauds] inapplicable . . . .



Gilliam, 340 S.W.2d at 30 (citing Chevalier, 213 S.W.2d at 532). 

 Concept Services and Morrison agreed to work together for a definite period of
time. Indeed, the terms of the agreements provide that Morrison would perform all of the Pizzeria
Uno and Ground Round installations throughout 1995. Because these agreements demand
performance for a specified amount of time in excess of one year from their making and thus
cannot be performed within one year, we conclude that the installation agreements for the Pizzeria
Uno and Ground Round accounts are governed by the statute of frauds.

 Morrison seeks to avoid the statute of frauds by asserting that the Pizzeria Uno and
Ground Round agreements are not oral agreements, but rather are evidenced by several documents
that together constitute a "writing." He directs us to six exhibits that he claims are written
evidence of the agreements between himself and Concept Services. Five are lists that state the
name of a city and a corresponding installation or opening date. The sixth is a sample copy of an
insurance policy covering the installation of equipment for Pizzeria Uno. Whether viewed
together or separately, none contain the terms of an agreement or a signature. In fact, these
documents do not include the names of the parties or indicate their involvement. They are merely
lists of locations and dates, and a copy of insurance. See Maginn, 919 S.W.2d at 167
(memorandum that merely stated appellants appeared to have good credit but further credit
inquiries should be taken did not satisfy statute of frauds). We find that, as a matter of law, the
documents presented by Morrison as evidence of the Pizzeria Uno and Ground Round installation
agreements do not satisfy the statute of frauds. 

 Finally, Morrison contends that the agreements are not governed by the statute of
frauds because the doctrine of partial performance removes them from the operation of the statute. 
However, the record indicates that Morrison never raised this argument in the trial court. The
first time Morrison brought this defense to the court's attention was on appeal. To preserve a
complaint for appeal, a party must make a timely request, objection, or motion to the trial court
concerning such complaint. Tex. R. App. P. 33.1; see also M.N. Dannenbaum, Inc. v.
Brummerhop, 840 S.W.2d 624, 630 (Tex. App.--Houston [14th Dist.] 1992, writ denied)
(appellant failed to preserve argument regarding part performance because he did not raise defense
in trial court). Moreover, as an affirmative defense to the statute of frauds, part performance must
be pleaded or it is waived. See Tex. R. Civ. P. 94; Mann v. NCNB Tex. Nat'l Bank, 854 S.W.2d
664, 668 (Tex. App.--Dallas 1992, no writ) (exception to statute of frauds is an affirmative
defense which must be pleaded and proved); Wiley v. Bertelsen, 770 S.W.2d 878, 882 (Tex.
App.--Texarkana 1989, no writ) (appellee has burden to establish part performance defense
affirmatively). Morrison did not assert part performance either in his trial pleadings or in the form
of a request, objection, or motion to the trial court, and therefore has not properly preserved this
issue for appeal. 

 Because we find that the agreements made between Concept Services and Morrison
regarding the 1995 installations for the Ground Round and Pizzeria Uno accounts are
unenforceable under the statute of frauds, we reverse the trial court's judgment awarding damages
for breach of the agreements.


Termination at Will

 Concept Services's sixth issue regarding the termination-at-will doctrine was
presented as an alternative to its statute-of-frauds defense. Because we have found the Pizzeria
Uno and Ground Round contracts to be unenforceable under the statute of frauds, we need not
consider this issue.


Promissory Estoppel

 Morrison also brought suit against Concept Services under the doctrine of
promissory estoppel as an alternative to his breach of contract claims. However, the jury never
reached this question because it was conditioned on findings adverse to Morrison on the breach
of contract questions. Generally, promissory estoppel "may operate to preclude a defense based
on the statute of frauds." "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 937
(Tex. 1972). "Promissory estoppel allows a cause of action to a promisee who has acted to his
detriment in reasonable reliance on an otherwise unenforceable promise." Bailey v. City of Austin,
972 S.W.2d 180, 193 (Tex. App.--Austin 1998, pet. denied); see also Wheeler v. White, 398
S.W.2d 93, 96-97 (Tex. 1965). The elements of promissory estoppel include: (1) a promise; (2)
foreseeability of reliance thereon by the promisor; and (3) detrimental reliance by the promisee. 
English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983).

 Morrison testified that at the end of the 1994 year he wanted to solidify his working
relationship with Concept Services to be able to anticipate his yearly income and work schedule. 
According to Morrison, he discussed his concerns with Hamilton several times and eventually
Concept Services, through Hamilton, promised that Morrison would perform all of the Ground
Round and Pizzeria Uno installations for 1995. Morrison testified further that he "rel[ied] upon
the fact that [he] would get that work in 1995."

 Morrison's testimony indicates that he could have established a question of fact for
the jury on his promissory-estoppel claim. See Kindred v. Con/Chem, Inc., 650 S.W.2d, 61, 63
(Tex. 1983) ("[T]here is some evidence, more than a scintilla, if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds as to the existence of the vital
fact."). Therefore, we remand this issue to the trial court for further proceedings. 


Sufficiency of the Evidence

 In their seventh, eighth, and ninth issues, appellants challenge the legal and factual
sufficiency of the evidence supporting the jury's finding related to the Ground Round installation
in the Prudential Building and the anticipated installation jobs for Staples Office Supply Company. 
In reviewing a legal sufficiency or "no-evidence" point, we must consider only the evidence and
inferences tending to support the finding of the trier of fact and disregard all evidence and
inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert.
denied, 111 S. Ct. 135 (1990). These fact findings must be upheld if there is more than a scintilla
of evidence to support them, that is, if the evidence furnishes some reasonable basis for differing
conclusions by reasonable minds as to evidence of a vital fact. See Kindred, 650 S.W.2d at 63;
Stedman v. Georgetown Sav. & Loan Ass'n, 595 S.W.2d 486, 488 (Tex. 1979). If there is any
evidence of probative force to support the finding, the no-evidence challenge will fail. See
Southern States Transp., Inc. v. State, 774 S.W.2d 639, 640 (Tex. 1989). 

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence, and should set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). The appellate court may not substitute its judgment for
that of the trier of fact simply because it disagrees with the result. See Peco Constr. Co. v.
Guajardo, 919 S.W.2d 736, 739 (Tex. App.--San Antonio 1996, writ denied).


Ground Round Installation in the Prudential Building

 Concept Services asserts that (1) "the evidence of the alleged agreement on the
Ground Round Prudential job was vague and indefinite and, hence, legally, or alternatively
factually, insufficient"; and (2) there was no evidence or insufficient evidence of any breach of
this alleged agreement. Morrison initially contends that Concept Services did not properly
preserve this issue because it failed to raise it at the directed-verdict stage and the jury-charge
conference. We disagree. 

 A no-evidence complaint may be preserved in the trial court by a motion for
instructed verdict, by an objection to the charge, by a motion to disregard a jury finding, by a
motion for judgment non obstante veredicto, or by a motion for new trial. Cecil v. Smith, 804
S.W.2d 509, 510-511 (Tex. 1991). A factual-insufficiency complaint must be raised in a motion
for new trial. See Tex. R. Civ. P. 324(b). Concept Services raised its no evidence and
insufficiency claims in its motion for new trial and its motion for judgment notwithstanding the
verdict. We find that Concept Services preserved error and will consider its complaint. 

 To be enforceable "a contract must be sufficiently definite in its terms so that a
court can understand what the promisor undertook." T.O. Stanley Boot Co., Inc. v. Bank of El
Paso, 847 S.W.2d 218, 221 (Tex. 1992). The material terms of the contract must be agreed upon
before a court can enforce the contract. Id. For example, a contract may be found indefinite
because it does not provide the time of performance, the price to be paid, the work to be done, the
service to be rendered, or the property to be transferred. See Pennington v. Gurkoff, 899 S.W.2d
767, 770 (Tex. App.--Fort Worth 1995, writ denied); Farah v. Mafrige & Kormanik, P.C., 927
S.W.2d 663, 678 (Tex. App.--Houston [1st Dist.] 1996, no writ) (material terms of contract to
loan money are amount to be loaned, maturity date of loan, interest rate, and repayment terms). 

 One of the initial jobs Morrison performed for Hamilton was the Ground Round
installation in the Prudential Building in Boston, Massachusetts (the "Prudential Job"). The
record reflects that at the time Morrison was working with Concept Services on a job-to-job basis. 
Morrison and Concept Services agreed that for this installation Morrison would be paid a base
amount plus extras, because they anticipated that this would be an extremely difficult job. The
Prudential Job was particularly difficult because the restaurant was constructed during the
holidays, a mall is located within the building, the construction site was located on the second
floor, and access to the site was difficult. While most Ground Round jobs generally took three
days to complete, the Prudential Job took two weeks. 

 After the installation was complete, Concept Services paid Morrison the base
amount agreed upon and the expenses that he incurred. Morrison testified, however, that
Hamilton failed to pay him for his extra time, instead insisting that Morrison would get more work
from Concept Services "coming down the pike." In response, Hamilton testified that Morrison
gave him an invoice for the work on the Prudential Job, and he paid this invoice in full. The jury
found that Morrison and Concept Services agreed that Morrison would be paid for extras for the
Prudential Job, and that Concept Services breached this agreement. (9) 

 When viewed in the light most favorable to the jury's verdict, the evidence clearly 
establishes that Morrison and Concept Services agreed that Morrison would install equipment at
the Prudential Building for a certain amount and that Concept Services breached this agreement. 
Both Morrison's and Hamilton's testimony sufficiently sets forth the terms of the contract. (10) In
addition, the record reflects that Concept Services failed to pay Morrison for the extra time he
spent on this project. Therefore, we find that the evidence is legally sufficient to support the
jury's finding concerning this contract.

 Viewing the evidence as a whole, it is equally clear that Morrison and Concept
Services agreed that Morrison would be paid for extras for the Prudential Job. As both Morrison
and Hamilton testified to this agreement, there is no evidence contrary to the jury's finding. The
record does contain conflicting evidence regarding whether Concept Services breached the
agreement for the Prudential Job. While Morrison testified that Concept Services failed to pay
him for all of the services he provided, Hamilton testified that he paid Morrison the full amount
reflected on the invoice for this job. Generally, the trier of fact is the sole judge of the credibility
of the witnesses and the weight to be given their testimony. See Kiel v. Texas Employers Ins.
Ass'n, 679 S.W.2d 656, 658 (Tex. App.--Houston [1st Dist.] 1984, no writ). Having conflicting
evidence from both sides, the jury had discretion to believe Morrison's rendition of the facts. The
jury's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Thus, we find that the evidence is factually sufficient to support the jury's finding
regarding the contract for the Prudential Job.

 We overrule Concept Services's seventh and eighth issues.


Staples Installation

 Hamilton asserts that there was no evidence or, in the alternative, insufficient
evidence to support the jury's finding that Hamilton and Morrison agreed that Morrison would
perform the installations for Staples Office Supply Company (the "Staples Job") because evidence
of this alleged agreement was vague and indefinite. A contract must be sufficiently definite in its
terms to be legally binding. See T.O. Stanley Boot Co., Inc., 847 S.W.2d at 221. 

 The record indicates that Staples contacted Hamilton to install equipment in at least
two of its stores. Hamilton decided to pursue this opportunity independent from Concept Services
as an "outside venture" and approached Morrison to do the installation work on this job. 
According to Morrison, this was a regular installation job whereby he was acting as an
independent contractor and would be paid a fixed price plus extras by Hamilton. Hamilton
testified that he and Morrison formed a partnership for this job, agreeing to split the profits and
losses fifty-fifty. Morrison responded that he never entered into a partnership with Hamilton. 

 Hamilton gave Morrison information about a training opportunity, indicating that
Morrison should attend the program to prepare for the Staples Job. Morrison attended the training
and later drove to Michigan to perform the installation. Morrison testified that when he reached
the job site, there was already a different crew there installing equipment because Hamilton did
not make the arrangements concrete, and Morrison was told to leave. Hamilton testified that
Morrison arrived at the site without the right equipment and Staples had to get a new crew to do
the work. (11) Morrison billed Hamilton for the expenses he incurred for the training and for
preparing for that first Staples Job: $1949.25. Hamilton paid him a little over half of that amount
with a personal check for $1000. 

 Viewing only the evidence and inferences tending to support the finding of the trier
of fact, the evidence establishes that Hamilton asked Morrison to perform at least two installations
for his personal Staples account, and Morrison agreed. (12) The evidence also establishes that they
agreed that Morrison would be paid a fixed amount plus his extras. This evidence is sufficiently
definite to indicate the contract's material terms. We conclude that this evidence is legally
sufficient to support the jury's finding that Morrison and Hamilton agreed that Morrison would
perform the installations for the Staples Job for a fixed amount and extras.

 Considering all the evidence in its entirety, the record indicates that Hamilton and
Morrison dispute the terms of their agreement for the Staples Job. Although Hamilton testified
that he formed a partnership with Morrison for this job, Morrison testified that they agreed that
he would be paid a fixed amount plus extras. As the jury is the sole judge of the credibility of the
witnesses, the jury's finding here is not so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. See Kiel, 679 S.W.2d at 658. We find that the jury's finding
is factually sufficient.

 We overrule this issue.

Attorney's Fees

 In their final two issues, appellants challenge the trial court's award of attorney's
fees to Morrison, claiming that (1) Morrison's claims were not presented to Hamilton prior to suit;
(2) Morrison's claims were not properly presented to either Concept Services or Hamilton; (3)
Morrison failed to segregate the attorney's fees claimed between actions that authorize attorney's
fees and those that do not; (4) the amount of attorney's fees awarded is manifestly too large; and
(5) the trial court should have conditioned the award of attorney's fees on an unsuccessful appeal
by either Hamilton or Concept Services. 


Proper Presentment

 To recover attorney's fees for a breach of contract claim, a claimant must "present
the claim to the opposing party or to a duly authorized agent of the opposing party." See Tex.
Civ. Prac. & Rem. Code Ann. § 38.002 (West 1997) (emphasis added). The purpose of this
presentment requirement is to allow the person against whom it is asserted an opportunity to pay
a claim within 30 days after notice of the claim without incurring an obligation for attorney's fees. 
See Jones v. Kelley, 614 S.W.2d 95, 100 (Tex. 1981); Bethel v. Norman Furniture Co., 756
S.W.2d 6, 8 (Tex. App.--Houston [1st Dist.] 1988, no writ).

 No particular form of presentment is required under section 38.002. See Tex. Civ.
Prac. & Rem. Code Ann. § 38.002 (West 1997); Jones, 614 S.W.2d at 100; Bethel, 756 S.W.2d
at 8. Texas courts have found various forms of presentment to be sufficient to support an award
of attorney's fees, such as oral and written demands and requests for admissions and responses
thereto. See Jones, 614 S.W.2d at 100. In a breach of contract case the presentment requirement
can be met when a plaintiff presents the contract claim to the opposing party and that party fails
to tender performance. See Chandler v. Mastercraft Dental Corp. of Tex., Inc., 739 S.W.2d 460,
470 (Tex. App.--Fort Worth 1987, writ denied) (citing Jones, 614 S.W.2d at 100). In addition,
nonpayment of a bill or invoice for thirty days also satisfies the presentment requirement. De Los
Santos v. Southwest Tex. Methodist Hosp., 802 S.W.2d 749, 757 (Tex. App.--San Antonio 1990,
no writ). 

 First, Hamilton asserts that Morrison did not comply with the presentment
requirement because he never sent a demand letter. Morrison argues that he complied with the
presentment requirement by sending a demand letter to Concept Services. Because section 38.002
requires the claimant to present the claim to the opposing party, we hold that the demand letter
sent to Concept Services does not, by itself, satisfy the presentment requirements of section 38.002
with regard to Hamilton. 

 A demand letter, however, is not the only way to satisfy the presentment
requirement. See Jones, 614 S.W.2d at 100 (no form of presentment is required under section
38.002). Where no formal written demand letter exists, courts must examine the facts and
determine whether the claim was adequately presented. See Bethel, 756 S.W.2d at 8; Carrington
v. Hart, 703 S.W.2d 814, 818 (Tex. App.-- Austin 1986, no writ). Thus, we must examine the
facts with regard to those claims made against Hamilton.

 Here, Morrison asserted a breach of contract claim for the Staples Job against
Hamilton individually. (13) After the Staples Job fell through, Morrison sent Hamilton an invoice,
billing him $1949.25. Hamilton paid Morrison $1000. The invoice Morrison sent to Hamilton
constituted a sufficient demand for payment and thus satisfied the presentment requirement. See
De Los Santos, 802 S.W.2d at 757 (evidence that appellant received bill from hospital sufficiently
established presentment of claim); Roylex, Inc. v. Avco Community Developers, Inc., 559 S.W.2d
833, 838 (Tex. Civ. App.--Houston [14th Dist.] 1977, no writ) (invoices sent by subcontractor
to general contractor constituted sufficient demand for payment on its claim to entitle
subcontractor to award of attorney's fees). Therefore, we conclude that Morrison's claims were
properly presented to Hamilton prior to this suit.

 Second, appellants assert that the demand letter Morrison sent to Concept Services
is legally and factually insufficient. Specifically, appellants allege that while the demand letter
informed them of the claims involving the Pizzeria Uno and Ground Round contracts for 1995,
it failed to reflect Morrison's claims regarding the Staples Job; (14) the installation of the NAX cases;
the 1993 Boston Chicken installations; and the Prudential Job. To recover attorney's fees under
section 38.002, "the claimant must present the claim to the opposing party." Tex. Civ. Prac. &
Rem. Code Ann. § 38.002 (West 1997) (emphasis added). Thus, in order to recover attorney's
fees for all of his contract claims, Morrison was required to present each claim to the appellants. 
However, as we stated above, a demand letter is not the only evidence available to determine
whether a claim was properly presented, and we must look to the evidence in the absence of a
demand on a specific claim. See Jones, 614 S.W.2d at 100; Bethel, 756 S.W.2d at 8.

 Morrison alleged that Concept Services failed to comply with their agreement that
Morrison would be paid extra for installing NAX cases into the Boston Chicken restaurants. After
each Boston Chicken job was completed, Morrison sent Concept Services an invoice billing them
$3250, which reflected the base price agreed upon for each for Boston Chicken installation
($2750) and an extra $500 for installing the NAX cases. Morrison testified that Concept Services
paid Morrison only $2750, and the record reflects that the $3250 figure printed on some of the
invoices was marked out by hand and reduced to $2750. These invoices constituted a sufficient
demand for payment and thus satisfy the presentment requirement. See De Los Santos, 802
S.W.2d at 757; Roylex, Inc., 559 S.W.2d at 838. Thus, we conclude that Morrison properly
presented his breach of contract claim regarding the NAX cases to Concept Services.

 Morrison also alleges that Concept Services breached the agreement it had with him
related to the 1993 Boston Chicken installations. (15) During discovery in this case, questions and
requests were submitted by Morrison to Concept Services regarding this alleged agreement. In
one request, Morrison asked Concept Services to admit that it intended that Morrison would
perform the Boston Chicken installations for 1993. Concept Services admitted in part that it did
so intend Morrison to perform these installations on a case-by-case basis. In addition, in
interrogatories submitted to Concept Services, Morrison asked questions regarding the
subcontractor that Concept Services used instead of Morrison for the Boston Chicken account in
1993. And finally, in his requests for production, Morrison requested all documents related to
the 1993 Boston Chicken installations. 

 This correspondence as a whole clearly indicates that Concept Services had notice
of Morrison's Boston Chicken claim and thus constitutes sufficient proof of presentment. See
Jones, 614 S.W.2d at 100 (citing Welch v. Gammage, 545 S.W.2d 223, 226 (Tex. Civ.
App.--Austin 1977, writ ref'd n.r.e.)) (request for admission and its response in which party
admitted he refused to pay a claim were sufficient presentment); Chandler, 739 S.W.2d at 470
(detailed correspondence of claim between lawyers on both sides constituted adequate
presentment). We conclude, therefore, that Morrison properly presented his breach of contract
claim related to the 1993 Boston Chicken installations to Concept Services. 

 Finally, Morrison brought a contract claim against Concept Services for the extras
he incurred for the Prudential Job. However, Morrison did not give Concept Services an invoice
for the extras that he claims here. The record does not reflect that Morrison presented this claim
in any form to Concept Services. We find that this claim was not adequately presented to Concept
Services. 


Proper Segregation

 Appellants next contend that the trial court failed to: (1) segregate the claims that
authorize attorney's fees from those that do not; and (2) "segregate the fees incurred for pursuit
of the Staples contract claims (which was asserted only against Matt Hamilton) from the fees
incurred on claims asserted against Concept Services." We agree. 

 When awarding attorney's fees, the trial court may only award those fees that are
"reasonable and necessary" for the prosecution of the suit. Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 10 (Tex. 1991) (citations omitted). "[T]o show the reasonableness and necessity
of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the
defendant sought to be charged with the fees on a claim which allows recovery of such fees." 
Id. The party seeking to recover attorney's fees carries the burden of proof. Id. 

 The district court awarded $40,175 in attorney's fees; however, the court's
judgment does not specify on what basis she made this award. While Morrison asserted several
claims against appellants, it is not clear what portion of his attorney's time and expenses was
allotted to asserting and proving damages for those claims for which attorney's fees can be
awarded. Additionally, the trial court awarded attorney's fees against Concept Services and
Hamilton, jointly and severally. Thus, under this judgment Hamilton is liable to pay the entire
attorney's fee award even though the only claim brought against Hamilton for which Morrison is
entitled to attorney's fees is the claim concerning the Staples Job.

 Morrison urges that this case falls within the exception to the duty to segregate
"when the attorney's fees rendered are in connection with claims arising out of the same
transaction and are so interrelated that their 'prosecution or defense entails proof or denial of
essentially the same facts.'" Id. at 11. While we recognize that segregation is not necessary when
the claims are dependent on the same set of facts or circumstances and are intertwined to the point
of being inseparable, that is not the situation here. See id. 

 All of Morrison's claims that allowed recovery of attorney's fees involved different
facts; the 1995 claims involved events that occurred at the end of 1994 and early 1995, (16) while the
Boston Chicken claim involved events surrounding 1993. (17) Moreover, the facts and circumstances
surrounding the Staples Job concern only Hamilton and not Concept Services. (18) The attorney's
fees could have been segregated in a realistic fashion to reflect (1) the amount of Morrison's
attorney's time and expense allotted to the claims for which recovery is authorized; and (2) the
defendant charged with each claim. See Koch Oil Co. v. Wilber, 895 S.W.2d 854, 867 (Tex.
App.--Beaumont 1995, writ denied) (attorney's fees could have "been segregated in a realistic
fashion to place responsibility where it belonged").

 Therefore, we remand this issue to the trial court for further consideration. See
Stewart Title Guar. Co., 822 S.W.2d at 11 ("[A]n award of attorney's fees erroneously based
upon evidence of unsegregated fees requires a remand.").

CONCLUSION

 Because we hold that the contracts between Morrison and Concept Services
regarding the 1995 installations for the Pizzeria Uno and Ground Round accounts were
unenforceable under the statute of frauds, we reverse that portion of the trial court's judgment
awarding damages against Concept Services for breach of those contracts and remand Morrison's
promissory estoppel claim to the trial court. As attorney's fees were not properly segregated and
Morrison's claims regarding the Prudential Job were not presented to Concept Services, we also
remand the issue of attorney's fees to the trial court for further proceedings consistent with this
opinion. In all other respects the judgment of the county court at law is affirmed.



 

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Remanded in Part

Filed: March 11, 1999

Do Not Publish

1. Concept Services and Hamilton are referred to collectively as appellants.
2. See Tex. Bus. & Com. Code Ann. § 26.01 (West 1987).
3. Morrison asserts that Concept Services, through Hawkins, promised that Morrison would
perform all of the Boston Chicken installations in 1993 and agreed to pay him extra to install NAX
cases in the Boston Chicken restaurants. Concept Services's alleged breach of these agreements
forms the basis of Morrison's and Hawkins's disagreement.
4. Conditioned on negative findings to the contract questions, the jury was submitted alternative
questions concerning Morrison's promissory estoppel claims. 
5. The jury also found that Concept Services failed to comply with an agreement it made with
Morrison that (1) Morrison would perform all of the installations for the Boston Chicken account
in 1993, but awarded no damages for this breach; (2) Morrison would be paid extra for
installations of NAX cases as part of the Boston Chicken installations; and (3) that Hamilton did
not wrongfully interfere with Morrison's past or prospective contractual relations with Concept
Services. The jury found that Morrison had been damaged to the extent of $300 for an increase
in an insurance premium paid by Morrison. Concept Services does not appeal that portion of the
trial court's judgment awarding damages for the extra installations and the insurance premium
increase. 
6. In issues one through four, Concept Services challenges the damages awarded by the jury
resulting from Concept Services's breach of the Pizzeria Uno and Ground Round contracts. In
issue six it asserts, as an alternative to its statute-of-frauds defense, that Morrison is barred from
recovering on the Pizzeria Uno and Ground Round contracts under the termination-at-will
doctrine.
7. Morrison himself testified that the agreements were made at this time, and this fact was
uncontroverted at trial. 
8. The jury found that Morrison and Concept Services entered into agreements which provided
that Morrison would perform "all of the installations for the Pizzeria Uno account in 1995" and
"all of the installations for the Ground Round account in 1995."
9. In its brief, Concept Services asserts that there is no evidence or, in the alternative,
insufficient evidence to support the jury's finding that Morrison agreed "to charge a lesser amount
on the Ground Round Prudential job in exchange for the promise that he would 'get what's coming
down the pike.'" However, the jury did not find such an agreement. The jury found that
Morrison and Concept Services agreed that Morrison would be paid extra for the Prudential Job. 
Thus, we will apply the no evidence and insufficient evidence standards to the actual jury finding
and not the finding asserted by Concept Services.
10. Hamilton himself testified that Morrison was paid a flat rate plus extras for each installation. 
And Morrison testified that Concept Services agreed that he would be paid a base amount plus
extras, such as additional time or equipment.
11. On cross-examination Hamilton admitted that he was not at the job site in Michigan and
cannot be sure that Morrison did not have the right equipment.
12. Hamilton himself testified that he asked Morrison to perform this installation and that
Morrison agreed to do the installation work on this job.
13. Morrison also claimed that Hamilton intentionally interfered with his business relationship
with Concept Services. As this is a tort claim, section 38.002 does not apply and this claim is not
at issue. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997).
14. Morrison's breach of contract claim for the Staples Job was brought against Hamilton
individually. As we have already found that this claim was properly presented to Hamilton, we
need not consider this issue here.
15. Morrison claimed that Concept Services breached its agreement that Morrison would
perform all of the Boston Chicken installations for 1993.
16. As we have found that the 1995 contracts were unenforceable under the statute of frauds,
Morrison is not entitled to attorney's fees on this claim.
17. Concept Services did not appeal the portion of the judgment finding it liable to Morrison for
the installation of the NAX cases.
18. The Prudential Job is not an issue here because we have already found that Morrison is not
entitled to attorney's fees on this claim as it was not properly presented. 


M>See Tex. Bus. & Com. Code Ann. § 26.01 (West 1987).
3. Morrison asserts that Concept Services, through Hawkins, promised that Morrison would
perform all of the Boston Chicken installations in 1993 and agreed to pay him extra to install NAX
cases in the Boston Chicken restaurants. Concept Services's alleged breach of these agreements
forms the basis of Morrison's and Hawkins's disagreement.
4. Conditioned on negative findings to the contract questions, the jury was submitted alternative
questions concerning Morrison's promissory estoppel claims. 
5. The jury also found that Concept Services failed to comply with an agreement it made with
Morrison that (1) Morrison would perform all of the installations for the Boston Chicken account
in 1993, but awarded no damages for this breach; (2) Morrison would be paid extra for
installations of NAX cases as part of the Boston Chicken installations; and (3) that Hamilton did
not wrongfully interfere with Morrison's past or prospective contractual relations with Concept
Services. The jury found that Morrison had been damaged to the extent of $300 for an increase
in an insurance premium paid by Morrison. Concept Services does not appeal that portion of the
trial court's judgment awarding damages for the extra installations and the insurance premium
increase. 
6. In issues one through four, Concept Services challenges the damages awarded by the jury
resulting from Concept Services's breach of the Pizzeria Uno and Ground Round contracts. In
issue six it asserts, as an alternative to its statute-of-frauds defense, that Morrison is barred from
recovering on the Pizzeria Uno and Ground Round contracts under the termination-at-will
doctrine.
7. Morrison himself testified that the agreements were made at this time, and this fact was
uncontroverted at trial. 
8. The jury found that Morrison and Concept Services entered into agreements which provided
that Morrison would perform "all of the installations for the Pizzeria Uno account in 1995" and
"all of the installations for the Ground Round account in 1995."
9. In its brief, Concept Services asserts that there is no evidence or, in the alternative,
insufficient evidence to support the jury's finding that Morrison agreed "to charge a lesser amount
on the Ground Round Prudential job in exchange for the promise that he would 'get what's coming
down the pike.'" However, the jury did not find such an agreement. The jury found that
Morrison and Concept Services agreed that Morrison would be paid extra for the Prudential Job. 
Thus, we will apply the no evidence and insufficient evidence standards to the actual jury finding
and not the finding asserted by Concept Services.
10. Hamilton himself testified that Morrison was paid a flat rate plus extras for each installation. 
And Morrison testified that Concept Services agreed that he would be paid a base amount plus
extras, such as additional time or equipment.
11. On cross-examination Hamilton admitted that he was not at the job site in Michigan and
cannot be sure that Morrison did not have the right equipment.
12. Hamilton himself testified that he asked Morrison to perform this installation and that
Morrison agreed to do the installation work on this job.
13. Morrison also claimed that Hamilton intentionally interfered with his business relationship
with Concept Services. As this is a tort claim, section 38.002 does not apply and this claim is not
at issue. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997).
14. Morrison's breach of contract claim for the Staples Job was brought against Hamilton
individually. As we have already found that this claim was properly presented to Hamilton, we
need not consider this issue here.
15. Morrison claimed that Concept Services breached its agreement that Morrison would
perform all of the Boston Chicken installations for 1993.
16. As we have found that the 1995 contracts were unenforceable under the statute of frauds,
Morrison is not entitled to atto