**Douglas B. MOSELEY, Appellant**

**v.**

**Sherrie ARNOLD, Appellee**

**No. 06–15–00031–CV**

Court of Appeals of Texas, Texarkana.

Submitted: December 3, 2015

Decided: February 18, 2016

Rehearing Overruled March 22, 2016

Gerrit M. Pronske, Melanie Goolsby, Pronske Goolsby & Kathman, PC, Addison, TX, for appellant

Dean A. Searle, Ronan S. Searle, Searle & Searle, PC, Marshall, TX, for appellee

Before Morriss, C.J., Burgess and Carter,* JJ.

## OPINION

Opinion by Chief Justice Morriss

For at least the last twenty-four years, the five-acre tract at the southeast corner

---

* Jack Carter, Justice, Retired, Sitting by Assignment

1. The warranty deed conveying the five-acre tract to the original buyers, Robert T. Gorman and wife, Nancy S. Gorman, does not reference the restrictive covenant. Rather, the restrictive covenant is contained in a separate restrictive covenant agreement that was delivered to the Gormans contemporaneously at the closing with the warranty deed conveying the five-acre tract. Both the warranty deed conveying the five-acre tract and the restrictive covenant agreement were filed in the Deed Records of Harrison County. After setting forth the metes and bounds description of a tract owned by Moseley and to be burdened with a restriction, the restrictive covenant agreement references a contract of sale dated July 31, 1985:

> WHEREAS, by Contract of Sale dated July 31, 1985, [Moseley] agreed to sell a five-acre tract or parcel of land to Robert T. Gorman, and in such Contract of Sale, the said [Moseley] agreed to restrict the above described 6.379 acre tract … to preclude its development and use as a truck stop and fuel stop; and
> WHEREAS, the undersigned are desirous of fulfilling the terms and provisions of the Contract of Sale described above, and [Moseley] is desirous of creating the restrictive covenants as enumerated above.

It is undisputed that this referenced five-acre tract of land is the same five-acre tract conveyed to the Gormans. The restrictive covenant agreement does not describe the five-acre tract, but only references the contract of sale. The copy of the contract of sale in evidence indicates that the five-acre tract is

of Interstate Highway 20 and Texas Highway 43 in Harrison County, on which was once located a business known as Moseley's Truck Stop, has been unimproved property. But, back in 1985, when the five-acre tract and its personal property had been sold as a package by Douglas B. Moseley for a price of almost $1 million, it had hosted the truck stop. As part of the sale,[1] the five acres was benefitted by a restrictive covenant on the 6.379 acres located at the northeast corner of the same intersection and owned by Moseley (the Retained Tract). That covenant provided

---

described in an annexed Exhibit A; however, no Exhibit A is attached to the copy. The restrictive covenant agreement provides:

> NOW, THEREFORE, for and in consideration of the mutual promises, covenants and agreements of the undersigned parties, and in partial consideration of the Contract of Sale described above, and *for the benefit of Robert T. Gorman and wife, Nancy S. [G]orman, and their successors and assigns*, and to bind Douglas B. Moseley and his heirs, administrators, successors and assigns, the said Douglas B. Moseley declares that the [Retained Tract] may not be developed and used as a truck stop and fuel stop *to protect the value and desirability of the 5 acre tract or parcel of land purchased by Robert T. Gorman and wife, Nancy S. [G]orman, from the said Douglas B. Moseley,* and such restriction shall run with the real property and shall be binding on all parties having any right, title or interest in and to the [Retained Tract].

(Emphasis added). The contract of sale recited a purchase price of $971,500.00. The contract of sale also provided that included in the sale of the five-acre tract was all the equipment, fixtures, personal property, inventory, security deposits, and insurance policies associated with the Truck Stop. In the contract of sale, Moseley also represented that the financial statements of the Truck Stop are accurate and that he has made all business records pertaining to the Truck Stop available for the Gormans' audit. Moseley also agreed to license the name of "Moseley" to the Gormans "for use only in connection with the truck stop business on the property to be conveyed." In addition, Moseley agreed to

that the Retained Tract "may not be developed and used as a truck stop and fuel stop." Now, three decades after the sale, a dispute[2] has arisen between Moseley and the current owner of the five acres, Sherrie Arnold,[3] concerning the restrictive covenant's enforceability against the Retained Tract.[4]

place a restriction on the 6.379–acre tract to preclude its use as a truck stop.

2. In 2013, Moseley attempted to sell the Retained Tract to Reeves Enterprises, LLC, for $850,000.00. Although there is no evidence of the purpose for which Reeves Enterprises attempted to purchase the Retained Tract, Arnold states in her brief that the purpose was to build a truck stop. After the title company handling the close of the transaction declared the restrictive covenant an exception to the title, Moseley contacted Arnold to secure its release. Although she had previously been unaware of the restrictive covenant, Arnold refused to release it, thereby blocking the sale of the Retained Tract. Arnold has since placed the five-acre tract on the market.

In his petition for declaratory judgment, Moseley asked the trial court to declare the restrictive covenant unenforceable, alleging, *inter alia,* that Arnold lacks standing to enforce the restrictive covenant and that changed conditions entitle him to a judgment declaring the restrictive covenant unenforceable. In his motion for partial summary judgment, Moseley asserted that the restrictive covenant was unenforceable because (1) there is no vertical privity of estate between the Gormans and Arnold, and (2) the closure of the truck stop, and the failure of subsequent owners to reopen the truck stop, constitute changed circumstances entitling him to cancellation of the restrictive covenant. Moseley also asserted that the Gormans' and the subsequent owners' failure to give him notice when they intended to sell the property violated his first right of refusal contained in his contract for sale with the Gormans. He contended that this was a material breach of both the contract for sale and the restrictive covenant agreement that makes the restrictive covenant unenforceable. As we note hereafter, Moseley has waived any error related to this ground of his motion for partial summary judgment. *See infra* note 5. Even if he had not waived this error, his right of first refusal contained in the unrecorded contract for sale was void as to subsequent purchasers for value without notice. *See* TEX. PROP. CODE. ANN. § 13.001(a) (West 2014). The summary judgment evidence established that the five-acre tract had been conveyed by deed four times to subsequent purchasers. Each of these deeds recites that the conveyance was for valuable consideration. Moseley admitted that these conveyances were purchases and did not contend that any of the subsequent purchasers had notice of his right of first refusal.

3. The original purchasers, the Gormans, defaulted on the loan obtained to finance the purchase of the five-acre tract, and their lender foreclosed on its lien and sold the property at a trustee's sale on December 6, 1988, to Idlewilde Company. Apparently, sometime during the ownership of the five-acre tract by Idlewilde, the truck stop was destroyed by a fire, and all of the remaining structures and underground fuel tanks were removed. Consequently, the five-acre tract has not been used as a truck stop or fuel outlet for over twenty-four years. Through a series of conveyances, Arnold became the sole owner of the now unimproved five acres in October 2010. None of the deeds conveying the five acres references the restrictive covenant. It is undisputed that there has not been a formal assignment of the Gormans' rights under the restrictive covenant agreement to Arnold, or to any other person.

4. In 2014, Moseley filed a petition for declaratory judgment against Arnold asking the trial court, *inter alia,* to declare the restrictive covenant unenforceable. Arnold filed a counterclaim asking the trial court to declare the restrictive covenant valid and enforceable. After both parties filed motions for partial summary judgment, the trial court denied Moseley's motion, granted Arnold's motion, and entered a final judgment in favor of Arnold. Although the trial court granted Arnold's motion for partial summary judgment declaring the restrictive covenant valid and enforceable, and no trial on the merits was held on Moseley's other claims, the final judgment recites that "[t]his judgment finally disposes of all parties and claims and is appealable." Therefore, the judgment is final for the purposes of appeal. *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 206 (Tex.2001). Moseley does not bring any error regarding his tortious interference claims.

The trial court granted Arnold summary judgment that the restrictive covenant was enforceable against the Retained Tract. Moseley's appeal argues that Arnold lacked standing to enforce the covenant and that fact issues on the presence of changed conditions make Arnold's summary judgment improper.[5] We reverse the summary judgment and remand this matter to the trial court because, while (1) Arnold has standing to enforce the restric-

tive covenant, (2) fact issues regarding changed conditions preclude summary judgment.

### (1) Arnold Has Standing to Enforce the Restrictive Covenant

Moseley contends that Arnold lacks standing to enforce the restrictive covenant. He does not dispute in this Court that the restrictive covenant is a covenant that runs with the land.[6] Howev-

---

**5.** In addition to these issues, Moseley, in the Issues Presented section of his brief, lists the following:

I. Whether the Trial Court erred in entering Final Judgment in favor of Defendant, relying upon the November Partial Summary Judgment Order and the December Partial Summary Judgment Order.

II. Whether the Trial Court erred in entering the November Partial Summary Judgment Order.

III. Whether the Trial Court erred in entering the December Partial Summary Judgment Order.

. . . .

V. Whether a successor to grantee is estopped from enforcing a deed restriction originally agreed to by grantee to prevent grantor from operating a competing business when the original business located on grantee's estate is completely destroyed and grantee and his successors do not redevelop grantee's estate for its original business purpose.

However, Moseley only presents arguments with citation to authorities for his issues relating to standing and changed conditions as those issues relate to the propriety of the trial court granting Arnold's motion for partial summary judgment. The Texas Rules of Appellate Procedure require an appellant to present "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i); *In re Estate of Curtis*, 465 S.W.3d 357, 379 (Tex.App.–Texarkana 2015, pet. dism'd). " 'Bare assertions of error, without argument or authority, waive error.' " *Curtis*, 465 S.W.3d at 379 (quoting *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n. 5 (Tex.App.–Texarkana 2012, no pet.)). Since Moseley has not made argument with appropriate citation to authority on his four other issues, they are

waived, except insofar as the issues of standing and changed circumstances impact the propriety of the granting of Arnold's motion for partial summary judgment and the entry of final judgment in her favor. *See Strather v. Dolgencorp of Tex., Inc.*, 96 S.W.3d 420, 424–25 (Tex.App.–Texarkana 2002, no pet.) (holding that issues stated generally must be read in context of brief as whole and what actually argued in brief; any issues not argued are waived.)

**6.** "In Texas, a real property covenant runs with the land when it touches and concerns the land, it relates to a thing in existence or specifically binds the parties and their assigns, it is intended by the parties to run with the land, and the successor to the burden has notice." *MPH Prod. Co. v. Smith*, No. 06–11–00085–CV, 2012 WL 1813467, at *2 (Tex.App.–Texarkana May 18, 2012, no pet.) (mem. op.) (citing *Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex.1987); *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187 (Tex.App.–Texarkana 2003, pet. denied)). Further, "[t]here must also be privity of estate between the parties when the covenant was established." *Id.* (citing *Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex.App.–San Antonio 1997, writ denied)). Texas courts have found that privity of estate exists "by either simultaneous or successive interests in the same land." *Id.* (citing *Wayne Harwell Props.*, 945 S.W.2d at 218). Moseley conceded in the trial court that the restrictive covenant runs with the Retained Tract. We note that this was Arnold's sole basis for her motion for partial summary judgment. Therefore, if Arnold had standing to enforce the restrictive covenant, and if Moseley failed to produce sufficient summary judgment evidence to raise an issue of fact on each ele-

er, Moseley argues that, under the terms of the restrictive covenant agreement, Arnold is not one of the intended beneficiaries of the restrictive covenant. As we understand his argument, Moseley reasons that the transaction with the Gormans gave them two separate and distinct rights as expressed in the two separate documents delivered to them at closing. The warranty deed gave them their ownership rights in the five-acre tract, and the restrictive covenant agreement gave them the right to restrict the use of the Retained Tract. Moseley emphasizes that the warranty deed did not reference the restrictive covenant and points to the language in the operative clause of the restrictive covenant agreement stating that the restrictive covenant is "for the benefit of Robert T. Gorman, and wife, Nancy S. Gorman, and their successors and assigns." This, he argues, shows the clear intent of the parties to limit the right of enforcement of the restrictive covenant to the Gormans and their successors and assigns *of the restrictive covenant agreement.* In other words, Moseley contends that only those persons who received a specific, written assignment of the restrictive covenant agreement from the Gormans have standing to enforce the restrictive covenant.[7] Since there is no evidence of an assignment of the restrictive covenant agreement, and since none of the deeds in Arnold's chain of title reference the restrictive covenant, Moseley reasons that there is no privity of estate that would entitle Arnold to enforce the restrictive covenant. Arnold responds that the operative clause goes on to state that the Retained Tract "may not be developed and used as a truck stop and fuel stop to

protect the value and desirability of" the five-acre tract. She argues that the intent of the parties was that the intended beneficiaries of the restrictive covenant are the five-acre tract and any person owning an interest in the five-acre tract. Therefore, she argues, since she owns the five-acre tract, she is an intended beneficiary and has standing to enforce the restrictive covenant.

Standing is a constitutional prerequisite to maintaining suit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993). The lack of standing deprives a court of subject-matter jurisdiction to hear a case. *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex.2005). A party generally has standing to bring suit where a controversy exists between the parties that "'will be actually determined by the judicial declaration sought.'" *Tex. Ass'n of Bus.,* 852 S.W.2d at 446 (quoting *Bd. of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 283 S.W.2d 722, 724 (1955)).

■ *In re Estate of Hardesty,* 449 S.W.3d 895, 903 (Tex.App.–Texarkana 2014, no pet.). In suits over restrictive covenants, "a person has standing to enforce the restriction only on showing that the restriction was intended to inure to his or her benefit." *Country Comm. Timberlake Village, L.P. v. HMW Spec. Util. Dist.,* 438 S.W.3d 661, 667 (Tex.App.–Houston [1st Dist.] 2014, pet. denied) (citing *Calvary Temple v. Taylor,* 288 S.W.2d 868, 870 (Tex.Civ.App.–Galveston 1956, no writ)).

■ Generally, a restrictive covenant may be enforced only by the parties to the

---

ment of his defense of changed conditions, the trial court would have sufficient basis to grant Arnold's motion for partial summary judgment.

7. Moseley argues that this is in keeping with the purpose of the restrictive covenant, which he says is only fulfilled by the operation of the Truck Stop by the Gormans, their successors and assigns.

restrictive covenant agreement and those parties in privity with them. *Wasson Interests, Ltd. v. Adams,* 405 S.W.3d 971, 973 (Tex.App.–Tyler 2013, no pet.) (citing *Ski Masters of Tex., LLC v. Heinemeyer,* 269 S.W.3d 662, 668 (Tex.App.–San Antonio 2008, no pet.)). "Privity of estate exists when there is a mutual or successive relationship to the same rights of property." *MPH Prod. Co.,* 2012 WL 1813467, at *2 (citing *Wayne Harwell Props.,* 945 S.W.2d at 218; *Panhandle & S.F.R. v. Wiggins,* 161 S.W.2d 501, 504–05 (Tex.Civ.App.–Amarillo 1942, writ ref'd w.o.m.)). Further, "any person entitled to benefit under the terms of a restrictive covenant may enforce it." *Girsh v. St. John,* 218 S.W.3d 921, 923 (Tex.App.–Beaumont 2007, no pet.) (citing *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.,* 122 S.W.3d 378, 384 (Tex.App.–Texarkana 2003, pet. denied); *Taylor,* 288 S.W.2d at 872–73). The summary judgment evidence establishes that Arnold is the successor of the Gormans' interest in the five acres. The resolution of this issue, then, requires us to construe the intent of the parties, as expressed in the restrictive covenant agreement, to determine whether Arnold, as the successor of the Gormans' interest in the five-acre tract, is an intended beneficiary who is entitled to benefit under the terms of the restrictive covenant agreement.

We construe restrictive covenants using the general rules of contract construction. *See Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). "Whether restrictive covenants are ambiguous is a question of law. Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement." *Id.* (citing *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996)). Restrictive covenants "are 'unambiguous as a matter of law if [they] can be given a definite or certain legal meaning.'" *Id.* (quoting *Grain Dealers,* 943 S.W.2d at 458). If we find there is no ambiguity, we "must determine the intent from the language used in the document." *Silver Spur Addition Homeowners v. Clarksville Seniors Apartments,* 848 S.W.2d 772, 774 (Tex.App.–Texarkana 1993, writ denied). Our primary purpose "is to ascertain and give effect to the true intention of the parties as expressed in the instruments." *Ski Masters of Tex. LLC v. Heinemeyer,* 269 S.W.3d 662, 667 (Tex.App.–San Antonio 2008, no pet.) (citing *Owens v. Ousey,* 241 S.W.3d 124, 129 (Tex.App.–Austin 2007, pet. denied)). However, if a restrictive covenant is "susceptible to more than one reasonable interpretation, [it is] ambiguous." *Pilarcik,* 966 S.W.2d at 478. If the restrictive covenant is susceptible to two or more reasonable interpretations, then it "creates a fact issue as to the parties' intent." *TX Far W., Ltd. v. Tex. Invs. Mgmt., Inc.,* 127 S.W.3d 295, 302 (Tex.App.–Austin 2004, no pet.) (citing *Columbia Gas Transmission Corp.,* 940 S.W.2d at 589). "In construing the intent, a court is not to concern itself with the merits of restrictions because the parties to the restrictions had a right to adopt any type of restrictions they chose." *Id.*

The operative clause of the restrictive covenant agreement contains three clauses relevant to determining the parties' intent regarding its intended beneficiaries. First, it states that the purpose of the restrictive covenant is to benefit the Gormans, their successors and assigns. Second, it provides that the restrictive covenant is given "to protect the value and desirability of" the five-acre tract being purchased by the Gormans. Finally, the operative clause expresses the parties' intent that the restrictive covenant run with

the land and binds all parties owning any interest in the Retained Tract. Moseley's construction requires us to consider the first clause only and renders the remaining clauses meaningless. However, when an agreement is unambiguous,[8] "the instrument alone will be deemed to express the intention of the parties, for objective intent controls, not subjective intent. Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968) (citations omitted). Therefore, we examine the agreement in its entirety and consider every clause. When the clauses are read together, it is clear that the restrictive covenant is meant to benefit the five-acre tract the Gormans were purchasing, and that the Gormans and their successors and assigns are meant to be beneficiaries only to the extent of their ownership interest in the five-acre tract. Since the summary judgment evidence establishes that Arnold owns the five-acre tract and is a successor to the Gormans' interest in the five-acre tract, she is a beneficiary under the plain terms of the restrictive covenant agreement and may enforce the restrictions. *See Girsh*, 218 S.W.3d at 923. Therefore, Arnold has standing to enforce the restrictive covenant.

### (2) Fact Issues Regarding Changed Conditions Preclude Summary Judgment

Since Arnold established that she has standing to enforce the restrictive covenant and Moseley conceded that it ran with the land, the trial court's granting of Arnold's motion for partial summary judgment would be proper unless Moseley produced sufficient evidence to raise a fact issue on each element of his defense of changed conditions. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984). Texas courts have long recognized that "[a] court may refuse to enforce a restrictive covenant if there has been such a change of conditions that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant." *TX Far W., Ltd.*, 127 S.W.3d at 306–07 (citing *Cowling v. Colligan*, 158 Tex. 458, 312 S.W.2d 943, 945 (1958); *Dempsey v. Apache Shores Prop. Owners Ass'n*, 737 S.W.2d 589, 597 (Tex. App.–Austin 1987, no writ)). In other words, "where the reason for enforcing a restrictive covenant has ceased, equity will no longer enforce the covenant." *La Rocca v. Howard–Reed Oil Co.*, 277 S.W.2d 769, 772 (Tex.Civ.App.–Beaumont 1955, no writ). Further, when the conditions have sufficiently changed, it may bring about a termination of the restrictive covenant. *Overton v. Ragland*, 54 S.W.2d 240, 242–43 (Tex.Civ.App.–Amarillo 1932, writ dism'd). Generally, determining whether conditions have changed to the degree that justifies the non-enforcement, or termination, of a restrictive covenant is a fact question. *See TX Far W., Ltd.*, 127 S.W.3d at 308; *Overton*, 54 S.W.2d at 242–43.

To be entitled to summary judgment, the movant must establish "that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Hardesty*, 449 S.W.3d at 903. We review de novo the trial court's granting of a summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009). When reviewing a traditional summary judgment, "we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any

---

8. Neither of the parties contend the restrictive covenant agreement is ambiguous in this re-

gard, and we find that it is unambiguous regarding the intended beneficiaries.

doubts in the nonmovant's favor." *Hardesty*, 449 S.W.3d at 903; *see also Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Strather v. Dolgencorp of Tex., Inc.*, 96 S.W.3d 420, 422 (Tex.App.–Texarkana 2002, no pet.).[9] "If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment."[10] *Brownlee*, 665 S.W.2d at 112 (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *Life Ins. Co. of Virginia v. Gar-Dal, Inc.*, 570 S.W.2d 378, 381 (Tex.1978)).

A no-evidence summary judgment motion asserts that there is no evidence of one or more essential element of a claim or defense on which the non-movant has the burden of proof at trial. *Crocker v. Babcock*, 448 S.W.3d 159, 163 (Tex.App.–Texarkana 2014, pet. denied); *see* Tex. R. Civ. P. 166a(i). To defeat the motion, the non-movant must "present more than a scintilla of probative evidence on each element of his or her claim." *Id.* "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). When a party asserts both a traditional and a no-evidence summary judgment motion, we review the judgment first under the no-evidence standard. *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex.App.–Amarillo 2008, pet. denied). If the non-movant has failed to present more than a scintilla of evidence on each element of his claim, no traditional summary judgment review is required. *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004)).

■■■ Moseley contends that the trial court erred in granting partial summary judgment because genuine issues of material fact exist regarding his claim of changed conditions. Moseley argued at trial and argues in this Court that the restrictive covenant was granted within the context of the purchase and sale of the truck stop as a going concern. Within this context, the original purpose of the restrictive covenant, he argues, was to protect the value of the truck stop. In support of this argument, he points to the contract of sale, that evidences the sale of the truck stop, and to his affidavit in which he avers that the Gormans' and his original intention was that the restrictive covenant protect the value of the truck stop. Since this was the original purpose of the restrictive covenant, he argues, the destruction and

---

9. Generally, in a case in which both parties file motions for summary judgment and one is granted and the other is denied, "the proper disposition on appeal is for the reviewing court to render judgment for the party whose motion should have been granted." *Trahan v. Mettlen*, 428 S.W.3d 905, 908 (Tex.App.–Texarkana 2014, no pet.) (citing *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984)). However, in this Court, Moseley only challenges the trial court's granting of Arnold's motion for partial summary judgment and does not assert his entitlement to partial summary judgment, asking us only to reverse the judgment in favor of Arnold and remand the case to the trial court, alleging that Arnold lacks standing to enforce the restrictive covenant and that he has raised genuine issues of material fact regarding changed conditions.

10. A party asserting changed conditions implicitly confesses the existence of the restrictive covenant, but seeks to avoid its enforcement. Therefore, Moseley's claim of changed conditions is in the nature of an affirmative defense. *See Smith v. Killion*, No. 11–11–00083–CV, 2013 WL 1859336, at *5 (Tex. App.–Eastland Apr. 30, 2013, no pet.) (mem. op.) (holding abandonment is in nature of affirmative defense because it "implicitly confesses the existence of the easement").

non-rebuilding of another truck stop constitutes changed circumstances that frustrates the purpose of the covenant. He points to the evidence that the truck stop burned down, then all the remaining remnants of the buildings and the underground fuel tanks were removed over twenty-four years ago. Since that time, the five-acre tract has been sold several times, and none of the owners have sought to rebuild a truck stop on the property or operated any business on the five-acre tract that the covenant was intended to protect. Therefore, he argues, the restrictive covenant no longer secures the benefits to the five-acre tract as originally intended.

Arnold admits that the Gormans purchased the five-acre tract with an existing and operational truck stop and that one of the negotiated terms of the contract of sale was for a restrictive covenant to be placed on the Retained Tract. Nevertheless, she argues that Moseley has failed to raise any issues of material fact, and alternatively, that there is no evidence, that shows changed conditions that would justify the non-enforcement of the restrictive covenant. She argues that none of the facts on which Moseley relies prevent her from securing the benefits of the restrictive covenant such that it defeats the purpose of the restrictions. Although she does not contest the underlying facts relied on by Moseley, she argues that none of the actions or inactions of the various owners of the five-acre tract prevents it from being used as a truck stop. Further, she argues that she derives a substantial benefit from the fact that she has no competition from the property across the street because of the restrictive covenant. Finally, she argues that the fact that she was able to prevent Moseley from selling the Retained Tract for use as a truck stop establishes the benefit of the restriction to the five-acre tract. Although her argument regarding the purpose of the restrictive covenant is not well-developed, her response assumes that the purpose of the restrictive covenant was to protect the value of the five-acre tract, as long as it is capable of supporting a truck stop.

Arnold relies heavily on Texas cases involving residential subdivisions having a general plan that applies a residential-only restriction to all lots in the subdivision. *See, e.g., Cowling,* 158 Tex. 458, 312 S.W.2d 943; *Dempsey,* 737 S.W.2d 589; *Scaling v. Sutton,* 167 S.W.2d 275 (Tex. Civ.App.–Fort Worth 1942, writ ref'd w.o.m.); *Bethea v. Lockhart,* 127 S.W.2d 1029 (Tex.Civ.App.–San Antonio 1939, writ ref'd). In those cases, the courts stressed that the changed conditions must have occurred in the restricted area (i.e., the residential subdivision) or the surrounding area, and balanced the equities favoring the particular owner seeking to avoid the restrictive covenant against the equities favoring all of the other owners in the subdivision who purchased their lots in reliance on the residential restrictions. *See, e.g., Cowling,* 158 Tex. 458, 312 S.W.2d at 946. The courts are understandably cautious in granting non-enforcement of the residential-only restriction, since not enforcing the residential restriction as to some lots may adversely affect the value of all the remaining residential lots in the subdivision, and "the entire purpose and intention originally expressed to create a restricted residential [subdivision] could be thwarted." *Scaling,* 167 S.W.2d at 281. Nevertheless, even in those cases, when the conditions in the restricted area or the surrounding area have changed to such a degree that it defeats the purposes of the restrictive covenant, the restriction may be terminated. *See Overton,* 54 S.W.2d at 242–43.

In *Overton,* Ragland owned two lots bordering Broadway Street in Lubbock.

*Ragland v. Overton,* 44 S.W.2d 768, 768–69 (Tex.Civ.App.–Amarillo 1932, no writ) (appeal before remand). The deed to Ragland's predecessor in interest in 1908 contained a restriction limiting the lots use to residential purposes. *Id.* Before 1925, the neighborhood consisted of residences and farmland, and Broadway was used only for residential traffic. *Overton,* 54 S.W.2d at 242. However, in 1925, Texas Technological College was established on the west end of Broadway and College Avenue, which bordered the college and intersected Broadway. *Id.* By the time of trial, the traffic along Broadway was fifty times what it had been before the establishment of the college and was then used primarily for commercial and other non-residential purposes. In addition, numerous businesses had been erected on College and Broadway, such that Ragland's two lots were now located near the center of the business district. *Id.* Testimony established that the lots had a value of $3,000.00 for residential purposes and $15,000.00 for business purposes. *Id.* After a jury found that the changes rendered the lots unfit for residential purposes, Overton appealed, arguing that since testimony showed the lots still had a value of $3,000.00 as residential property, the evidence was insufficient to show that the lots were unfit for residential property. *Id.* at 241–42. In upholding the jury's verdict, the Amarillo Court of Appeals noted that "[c]hanged conditions in a neighborhood brought about by agencies outside of the parties themselves will terminate a building restriction limiting or restricting property in use for residential purposes only." *Id.* at 243. Thus, even though the lots had some value as residential lots, the restrictive covenant's purpose of maintaining the residential nature of the neighborhood had been essentially destroyed by the intervening events.

The gravamen of these changed-conditions cases is that, if the purpose of the restrictive covenant can no longer be realized in a substantial manner, the courts will terminate, or refuse to enforce, the restrictions. If the purpose of the restrictive covenant can no longer be realized at all, then, *ipso facto,* it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant. Therefore, determining what the parties intended to be the purpose of the restrictive covenant is essential.

### A. A Fact Issue Regarding the Purpose of the Restrictive Covenant Precludes Summary Judgment

"A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.,* 352 S.W.3d 462, 469 (Tex.2011) (citing *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex. 1981)). Further, the parol evidence rule "does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Id.* "Those circumstances include … 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties.'" *Id.* (quoting 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32.7 (4th ed.1999)).

"'Negotiations of the parties may have some relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole.'" *Id.* at 469–70 (quoting *Tanner Dev. Co. v. Ferguson,* 561 S.W.2d 777, 781 (Tex.1977)). In considering the surround-

ing circumstances, we can consider a prior or contemporaneous agreement that is consistent with the subject agreement only if it "does not vary or contradict the agreement's express or implied terms or obligations." *David J. Sack's, P.C. v. Haden,* 266 S.W.3d 447, 451 (Tex.2008) (citing *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (1958)). "'Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered.'" *Id.* (quoting *Columbia Gas Transmission Corp.,* 940 S.W.2d at 589).

In this case, the operative clause of the restrictive covenant agreement provides that the Retained Tract "may not be developed and used as a truck stop and fuel stop *to protect the value and desirability of the 5 acre tract or parcel of land* purchased by the [Gormans]." (Emphasis added). Although this phrase expresses the parties' intent to benefit the five-acre tract, it does not, by itself, give us insight into the nature of the five-acre tract that makes it valuable and desirable. Without knowing the nature of the five-acre tract that the parties are trying to protect, we cannot know the purpose of the restrictive covenant. For instance, if the five-acre tract was to be the site of a residential subdivision, the purpose of the restrictive covenant forbidding the development of a fuel or truck stop on the Retained Tract would clearly be to preserve the value and desirability of the five-acre tract *as residential property.* In our case, the parties agree that the Gormans purchased the five-acre tract with an existing and operational truck stop and that one of the negotiated terms of the transaction was for a restrictive covenant to be placed on the Retained Tract. Knowing these circumstances informs us of the nature of the five-acre tract when purchased—commercial property containing an operational

truck stop—and that the restrictive covenant was negotiated to protect the value and desirability of the property, at least as commercial property capable of supporting a truck stop, as Arnold argues, or perhaps, as Moseley argues, only so long as it is supporting an operational truck stop. Both of these are reasonable interpretations of the purpose of the restrictive covenant, based on the language in the operative clause and informed by the surrounding circumstances. Thus, the language of the operative clause is ambiguous. *See TX Far W., Ltd.,* 127 S.W.3d at 302.

When the operative clause is ambiguous, we may "look at recitals to ascertain the intent of the parties in executing the contract." *Universal Health Servs., Inc. v. Thompson,* 63 S.W.3d 537, 543 (Tex.App.–Austin 2001), *rev'd on other grounds by Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742 (Tex.2003). As we have seen above, the recital paragraphs refer to the contract of sale in which Moseley agreed to sell the five-acre tract to the Gormans and recites that the parties desire to fulfill the terms and provisions of the contract of sale. *See infra.* Since the recital paragraphs direct us to the contract of sale, we may also consider this prior agreement to determine if it will aid in establishing what the parties intended. *See* RESTATEMENT (SECOND) OF CONTRACTS § 214 (1981) ("Agreements ... prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish ... (c) the meaning of the writing, whether or not integrated."). As we have seen, the contract of sale shows that the sale of the five-acre tract included the sale of the then-existing and operating truck stop. *See infra.* Included in the contract of sale was Moseley's agreement to restrict the Retained Tract "to preclude its development and use

as a truck stop." Absent from the contract of sale, however, is any language that clearly states that the purpose of Moseley's agreement to restrict the Retained Tract is to protect the value of the five-acre tract only so long as there is an operational truck stop. Therefore, while the contract of sale may provide some evidence in support of Moseley's interpretation, we cannot say that it provides definitive evidence as to the purpose of the restrictive covenant intended by the original parties.

Thus, after considering the language of the restrictive covenant, the surrounding circumstances, and the contract for sale, the different interpretations of the parties as to the purpose of the restrictive covenant remain reasonable. If a restrictive covenant is "susceptible to more than one reasonable interpretation, [it is] ambiguous." *Pilarcik*, 966 S.W.2 at 478. This, then creates a fact issue as to the purpose of the restrictive covenant intended by the original parties. *See TX Far W., Ltd.*, 127 S.W.3d at 302. Therefore, we hold that, because the ambiguous language of the restrictive covenant cannot establish the purpose of the restrictive covenant intended by the original parties, a fact issue remains that precludes summary judgment.[11]

## B. Fact Issues Regarding Changed Conditions Preclude Summary Judgment

Under either interpretation of the purpose of the restrictive covenant asserted by the parties, the summary judgment evidence, when viewed in the light most favorable to Moseley, shows there remains a fact question regarding whether there has been such a change in conditions that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant. The contract of sale shows that the purchase of the five-acre tract included the sale of the truck stop as a going concern, that it had a sales price of $971,500.00, and that Moseley promised to place the restrictive covenant on the Retained Tract as part of the terms of the sale. Moseley also submitted summary judgment evidence that the truck stop had burned down and that all of its buildings and underground fuel tanks had been removed, over twenty-four years ago. He also brought forth evidence that the five-acre tract had been sold at least four times since the destruction and removal of the truck stop and that none of subsequent owners had rebuilt a truck stop on the property. Although there was no evidence of the purchase price paid for the five-acre tract by any purchaser after the truck stop was destroyed, Moseley testified by affidavit that the five-acre tract is currently valued at $49,500.00 by the Harrison County Appraisal District. In contrast, Moseley was recently offered $850,000.00 for the Retained Tract in contemplation that it would be used for the development of a truck stop.

Arnold sought to counter this evidence in her affidavit in support of her motion for partial summary judgment by attesting, "The Restrictive Covenant makes my five (5) acre tract or parcel of land more valuable as a result of having no competition for a truck and fuel stop directly across Interstate 20." Of course, this is her opinion and falls short of conclusive proof of that fact. Viewing the evidence in the light most favorable to Moseley, the

11. In this appeal, the parties have proffered two reasonable interpretations of the purpose of the restrictive covenant. At the trial of this case after remand, there may be other reasonable interpretations proffered based on additional evidence that may be discovered. We do not mean to imply that the parties and the trial court are limited on remand to only the two interpretations addressed in this opinion.

absence of a functioning truck stop on the five acres for over twenty-four years, and the valuation of the five acres at $49,500.00 by the appraisal district, would seem to belie this opinion, especially since Moseley was offered $850,000.00 for the Retained Tract. Even assuming, arguendo, that Arnold is correct that the purpose of the restrictive covenant was to protect the value and desirability of the five-acre tract as commercial property capable of supporting a truck stop, the non-development of the tract for over twenty-four years and the stark difference in the values of the tracts is some evidence that there has been such a change of conditions that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant.[12][13]

Since issues of fact remain regarding (1) the purpose of the restrictive covenant intended by the original parties, and (2) whether there has been such a change of conditions that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant, we find that the trial court erred in granting partial summary judgment, and final judgment, in favor of Arnold.

We reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

---

12. Arnold argues that it is obvious that having the exclusive right to build a truck stop is valuable. However, we must decide this case based on the summary judgment evidence. The only summary judgment evidence shows that, for whatever reason, the five-acre tract is valued at $49,500.00, whereas a nearby tract capable of supporting a truck stop was valued at $850,000.00. While Arnold may offer additional evidence of the value of the five-acre tract at trial on remand, we are bound in this appeal by the summary judgment evidence offered by the parties.

13. It is true that Arnold was able to prevent Moseley's sale of the Retained Tract by refusing to release the restrictive covenant. But, the prevention of Moseley's sale does not necessarily lead to the conclusion that the five-acre tract was thereby benefitted in any substantial manner.